A98A0091. RISNER v. R. L. DANIELL & ASSOCIATES, P. C. et al.
(500 SE2d 634)

BLACKBURN, Judge.

Beverly Boren Risner sued her former employer, R. L. Daniell & Associates (R. L. Daniell), for intentional infliction of emotional distress, tortious misconduct, and negligent hiring and retention. The trial court granted R. L. Daniell's motion for summary judgment, holding that Risner's claims were barred by the statute of limitation, and Risner appeals. For the reasons discussed below, we affirm.

This Court reviews de novo the grant of a motion for summary judgment to determine whether the trial court properly found that no material issues of fact existed and that the movant was entitled to judgment as a matter of law. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Risner was employed by R. L. Daniell, a small engineering firm, as a receptionist and secretary from August 9, 1993 through September 9, 1994. She claims that she was forced to resign due to the hostile working environment created by her supervisor, Chris Johnston, who was also a vice president and partner in the firm. On September 6, 1996, Risner sued R. L. Daniell, asserting claims of negligent hiring and retention, tortious misconduct, and intentional infliction of emotional distress.

---

[16] OCGA § 16-12-1 (d) (1).

Risner testified that, in the first couple of months after she was hired, Johnston showed her two cartoons she described as sexually explicit. Risner did not tell anyone other than Linda Mock, a receptionist, that she found the cartoons offensive. Risner said that Mock talked to her superior, Charolene Miller, about the cartoons, and that she did not recall seeing any other offensive cartoons after this discussion.

During the next several months, Johnston committed other acts that Risner considered offensive. Risner testified that Johnston always seemed to be in her presence and complained that Johnston would eat lunch with her in the office. On one occasion, Johnston told Risner that he did not enjoy having sex with his wife and asked if Risner ever had any problems with sex in her marriage. Risner also testified that Johnston would look at her breasts and her body instead of her eyes when he talked with her. She never told anyone other than Mock that she found this offensive.

Around January 1994, Johnston asked Risner if she had always had "full legs." Risner testified that, around April 1994, Johnston kissed her on the cheek to thank her for sending a wedding present to his daughter. In May or June, Johnston offered to help Risner move and told her he would love to see her new apartment. In July or August, Risner gave Johnston a ride to pick up his car, and he kissed her on the cheek and told her, "I really appreciate you doing this for me." In August, Johnston told Risner that he was having problems sleeping, and that he was having "thoughts" about someone.

On August 25, Risner spoke with Charolene Miller about Johnston's actions. This was the first time Risner had spoken to anyone in authority at the firm about Johnston. Risner said that Miller told her to tell Johnston how she felt if he did anything else.

The next day, Johnston asked Risner if she would like to go to dinner with him. Risner then told Johnston how she felt about his actions. Johnston told her that she was not the person he was interested in, and that he asked her to dinner because he enjoyed her company. Risner then went to tell Miller about the incident. Miller called Risner at home the next morning and said that she had spoken to Johnston. Miller said that Johnston was sorry and had not realized that he had upset Risner.

When Risner reported back to work on August 29, Miller told her that Johnston was not to have any contact with her. Risner testified that she believed this was an appropriate action by the company. Up until the time she resigned, Risner had no further contact with Johnston, except to say hello. Risner testified that Johnston did not appear upset with her, and that he did nothing to upset her from August 26 until she resigned.

On August 30, Risner spoke with Ray Daniell, the company's

president. Daniell told her that he would not tolerate sexual harassment and was going to keep Johnston away from her. He said that she could have come to him sooner, but she said she did not feel like she could. On September 8, Risner submitted her resignation, effective the next day. She testified that the resignation was based on the events occurring prior to August 26, and that Johnston had not done anything new after that date because they had had no interaction. She testified that she resigned because she did not feel that she had a chance working in the office with Johnston. She said nothing particular happened on September 8 to make her decide to resign.

The parties agree that the limitation period for each of Risner's claims is governed by OCGA § 9-3-33, which provides that claims for personal injury must be brought within two years after the cause of action accrues. The complaint in this action was filed on September 6, 1996. Accordingly, if Risner's claims accrued before September 6, 1994, they are barred by the statute of limitation.

In her deposition, Risner admitted that she suffered no acts of harassment after August 26, 1994, and that her decision to resign was based on actions occurring prior to that date. Since suit was not filed until more than two years after August 26, 1994, defendant contends that Risner's claims are barred by the statute of limitation. Risner, on the other hand, contends that defendant's actions constituted a "continuing tort," and that the limitation period did not begin running until she resigned.

In *Adams v. Emory Univ. Clinic*, 179 Ga. App. 620 (347 SE2d 670) (1986) (physical precedent only), we held that a plaintiff's claims against her employer arising out of a systematic course of harassment by her supervisor were barred by the two-year statute of limitation. In that case, the employee submitted her resignation on August 6, although she continued to work until September 3. The employee argued that the tort was continuing in nature, and that the limitation period did not begin running until September 3. We held, however, that the employee's cause of action accrued no later than August 6, because she admitted that, from that date on, she was no longer subjected to the conduct for which she filed suit. Id. at 622.

*Adams* relied on the following language in the Supreme Court's decision in *Hoffman v. Ins. Co.*, 241 Ga. 328, 330 (245 SE2d 287) (1978): "The test to be applied in determining when the statute of limitations begins to run against an action sounding in tort is in whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon the act, the cause of action accrues and the statute begins to run only when the damage is

sustained; but if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be." (Punctuation omitted.)

In *Smith v. Tandy Corp.*, 738 FSupp. 521 (S. D. Ga. 1990), the District Court for the Southern District of Georgia, relying on *Adams* and *Hoffman*, rejected the continuing tort theory and held that a plaintiff's claims for sexual harassment based on acts occurring more than two years before the plaintiff filed suit were barred by the statute of limitation.

In this case, plaintiff admitted that she had no interaction with Johnston after August 26, 1994, and that he committed no acts of harassment after that date. She admitted that her decision to resign was based on his actions prior to that date. Although plaintiff argues that her claims are based on defendant's continuing failure to discipline or terminate Johnston, and that the date of her resignation is therefore the relevant date, she points to nothing new that occurred on or after September 6, 1994 which caused her to resign. In an affidavit filed after her deposition, Risner stated that her supervisor suddenly became more critical of her work after she complained of Johnston's conduct. Pretermitting the issue of whether this affidavit contradicted her deposition testimony, Risner did not state in her affidavit that her resignation was due to actions occurring on or after September 6, 1994. Indeed, she admits that, by the time she spoke with Ray Daniell on August 30, 1994, she "was totally miserable and felt [she] was being ostracized by [her] co-workers and by management." Accordingly, her claims accrued prior to September 6, 1994, and are thus barred by the statute of limitation.

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 31, 1998.

*Leslie J. Cardin, Sharon L. Hopkins*, for appellant.

*Sullivan, Hall, Booth & Smith, Roger S. Sumrall, Heather R. Clark, Bates & Baum, Beverly B. Bates, John C. Stivarius, Jr.*, for appellees.