A94A2101. PHILLIPS v. PACIFIC & SOUTHERN COMPANY
et al.
(451 SE2d 100)

ANDREWS, Judge.

Phillips sued Pacific & Southern Company and its parent company, Gannett Company, Inc. d/b/a WXIA-TV and the president and general manager and the news director of WXIA-TV in a multi-count complaint arising out of his termination as a reporter and news anchor for WXIA-TV. The trial court granted summary judgment in favor of the defendants on all counts of the complaint alleging invasion of privacy, breach of contract, tortious interference with employment and intentional infliction of emotional distress. In his sole enumeration of error, Phillips claims the trial court erred by granting summary judgment for the defendants on his claim for intentional infliction of emotional distress.

The evidence shows that, as a reporter for WXIA-TV, Phillips was assigned to cover the homicide investigation in a highly publicized murder case. While covering the investigation, Phillips and others, who were sources of information for Phillips during his cover-

age, were approached by a motion picture producer about the possibility of selling the rights to their experiences in connection with the murder case for the purpose of using those experiences in the production of a movie or docudrama based on the murder case. Phillips and two of his sources subsequently signed a document purporting to be an option agreement with a movie production company, which provided that the company had an exclusive 30-day option to purchase their "life stories" including all of their experiences concerning the murder case Phillips was covering. If exercised, the option provided that the three would split payments of $100,000 for production of a two-hour docudrama; $200,000 for a four-hour docudrama, or $300,000 if a six-hour docudrama was produced.

According to Phillips, he immediately informed the defendants of his contact with the motion picture producer and of his agreement with his sources in the murder case that they would jointly participate in the proposed movie project. As to the option agreement, Phillips asserts that he informed the defendants of the agreement. In response to the defendants' claims that they were not aware of the terms of the option agreement, Phillips stated that the defendants never requested that he advise them of the terms of the agreement and that he was under no affirmative duty to inform them. It is unclear whether the option agreement, as signed, was legally binding and, ultimately, the option was never exercised by the production company. Phillips contends that he later decided not to pursue the movie project based in part on concerns expressed by a news anchor at WXIA-TV that the movie deal was a breach of journalistic ethics and that his credibility as a reporter would be compromised by an agreement giving him and his sources in the murder case a financial interest in the outcome of the case.

After Phillips and his sources signed the option agreement, they were subpoenaed to testify at a pre-trial hearing in the murder case held for the purpose of determining whether any witnesses in the case had entered into movie deals or other agreements giving them a financial interest in the outcome of the case, which might have an influence on their testimony in the case. At the hearing, which was widely covered by the news media, Phillips testified about the earlier agreement with his sources to jointly participate in a movie project concerning the case and about the option agreement. Shortly after the hearing, WXIA-TV terminated Phillips and broadcast a statement that: "WXIA-TV has today terminated the employment of Dean Phillips. Station management was not aware of the terms of an agreement which Dean Phillips had signed in April with Treasure Island Productions relating to a docudrama production of the Sara Tokars murder until last Friday, and immediately upon learning of those terms, station management removed him from the Sara Tokars case

and his other station assignments while the matter was being reviewed. After review, the station concluded it was necessary to terminate Mr. Phillips." Privately, Phillips received a letter from WXIA-TV informing him that he was terminated because the option agreement he signed with his sources violated the ethics policy of WXIA-TV and had irreparably damaged his credibility as a reporter and news anchor for WXIA-TV.

Phillips contends that the management of WXIA-TV knew about and initially approved of his involvement in a potential movie project with his sources on the murder case he was assigned to cover. He claims that, after the potential movie project was publicized at the pre-trial hearing in the murder case and public criticism arose over the journalistic ethics of his participation in such an agreement, WXIA-TV management falsely told him that they had no prior knowledge of his actions with respect to the proposed movie project. Phillips also contends that the statement publicly aired by WXIA-TV was a false or misleading statement about the reasons for his termination, broadcast by the defendants in an effort to protect the station from criticism about its prior knowledge and approval of his participation in the proposed movie project. The WXIA-TV news director asserted that Phillips was not given permission to enter into a business relationship with any of his sources or into a motion picture agreement regarding the case he was covering; that he told Phillips it would be inappropriate for him to enter into any such deals while covering the case as a WXIA-TV reporter, and that he first learned of the option document signed by Phillips at the time of Phillips' testimony at the pre-trial hearing in the murder case. Of course, in reviewing the grant of the defendants' motion for summary judgment, we must construe the record and all inferences therefrom in favor of Phillips, as respondent to the motion.

The tort of intentional infliction of emotional distress is comprised of four elements, all of which must be established in order for the claimant to recover: " '(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe.' " *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (335 SE2d 445) (1985). First, the record supports, and Phillips does not dispute, the claim of WXIA-TV that, at the time he was terminated, Phillips was an at-will employee who could be terminated with or without cause and without regard to the motives of his employer. *Borden v. Johnson*, 196 Ga. App. 288, 289 (395 SE2d 628) (1990). Accordingly, "that appellees discharged [Phillips] for whatever reason, without more, gives rise to no claim for the intentional infliction of emotional distress." Id. at 290-291. Secondly, a distinction must be made between

the causes of the emotional distress suffered by Phillips as a result of the events in this case. As he alleges, Phillips has suffered emotional distress resulting from humiliation and embarrassment in the news broadcasting industry because of public criticism that the agreement he made with his sources to participate in a movie project was a breach of journalistic ethics. Phillips suffered this criticism as a result of his own actions in making the agreement with his sources. There is no evidence that public criticism of Phillips in the news broadcasting industry over the perceived breach of journalistic ethics would have ceased or lessened even if WXIA-TV had acknowledged that it knew about and approved of Phillips' actions. Accordingly, the defendants' alleged wrongful conduct was not a cause of a substantial portion of the emotional distress suffered by Phillips. *Bridges*, supra at 230.

Construing the record in favor of Phillips' contentions, there is evidence that the defendants knew about and approved of his agreement with his sources to split the proceeds of a possible movie project based on the murder case, even though Phillips did not tell the defendants about the specific terms of the agreement, and that the defendants withdrew their approval only after the agreement was publicly revealed by Phillips' testimony at a hearing in the murder case and subsequently criticized by others as a breach of journalistic ethics. The essence of Phillips' claim is that the defendants: (1) lied to him by contending that his actions had not been approved and then wrongly terminated him on the basis that those actions destroyed his credibility as a reporter and news anchor for WXIA-TV; and (2) publicly broadcast a false or misleading statement about the reason for his termination to protect WXIA-TV from criticism for his actions. Phillips claims that as a result of the actions taken by the defendants he has been unable to find employment in the television news broadcasting industry and has suffered severe emotional distress.

As to the claim that the defendants broadcast a false statement about the reasons for his termination, there is no evidence that the public statement was false. The statement accurately stated that WXIA-TV had not earlier been aware of *the terms* of the option agreement and that upon learning of *those terms* and reviewing the matter, WXIA-TV concluded that it was necessary to terminate Phillips. No other reason was given for the termination. The record supports WXIA-TV's contention that it was not aware of the terms of the option agreement. At best, the statement, as broadcast, supports Phillips' contention that it was misleading and failed to publicly acknowledge WXIA-TV's prior approval of his actions.

There is evidence that the alleged wrongful conduct of the defendants, taken after public criticism arose over Phillips' actions, added to the emotional distress suffered by Phillips. There is evidence that the defendants lied to Phillips privately about WXIA-

TV's prior knowledge and approval of his actions and issued an incomplete and misleading public statement about his termination calculated to imply that station management did not at any time prior to Phillips' public testimony know about or approve of the agreement Phillips made with his sources. The conduct complained of by Phillips amounts to a claim of false accusations by the defendants made in connection with his employment. Generally, "[a] false accusation of dishonesty or lack of integrity in connection with one's employment conduct is undoubtedly a distressful, even 'horrifying' and traumatizing insult, but it is a common vicissitude of ordinary life." *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (404 SE2d 442) (1991). We conclude that the defendants' alleged wrongful conduct in this case did not rise to the requisite level of outrageousness and egregiousness necessary to support a claim for intentional infliction of emotional distress. *Peoples*, supra. The trial court correctly granted summary judgment in favor of the defendants.

*Judgment affirmed. Beasley, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 21, 1994 —
RECONSIDERATION DENIED DECEMBER 6, 1994 — ■

*Guy E. Davis, Jr.*, for appellant.
*Powell, Goldstein, Frazer & Murphy, James C. Rawls, Frank Love, Jr., Joseph D. Wargo*, for appellees.