A96A0492. BIVEN SOFTWARE, INC. et al. v. NEWMAN.
(473 SE2d 527)

RUFFIN, Judge.

Emily Newman sued Biven Software, Inc., its successors FSH Associates, Inc. and HBO & Company, Biven, Inc., Biven's founder and chief executive officer, Paul Harrison, Biven's President, David Engert, and its office manager, Elizabeth Marino (collectively "Biven") for malicious prosecution, intentional infliction of emotional distress, and breach of contract. Newman alleged the tortious conduct and contract breach occurred in connection with Biven's termination of her employment. The jury returned a verdict in favor of Newman on her emotional distress and contract claims and in favor of Biven on her malicious prosecution claim. Biven appeals the trial court's denial of its motion for directed verdict on Newman's intentional infliction of emotional distress and contract claims. We reverse.

"In determining whether the trial court erred by denying [Biven's] motion for a directed verdict this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict." (Punctuation omitted.) *Evans v. Willis*, 212 Ga. App. 335, 337

(1) (441 SE2d 770) (1994). A directed verdict is proper only where " 'there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom *demands* a certain verdict.' [Cit.]" Id.

Viewed in this light, the evidence reveals that Newman worked as a contract employee in an administrative position at Biven from April 1991 to October 1992. At the time, Biven was just beginning operations. When Biven offered Newman the position, Harrison purportedly promised that although he could not presently afford to pay her the $35,000 annual salary she was making in her previous employment, she would be placed on payroll as a full-time employee at an annual salary of $35,000 "later," further "down the line," "when we get more money." Newman testified that Biven promised that as a full-time employee, she would be entitled to paid vacation, overtime, and other employee benefits, including corporate stock. Biven never gave Newman a date when she would be made a full-time employee. Biven's then president and chief operating officer, David Engert, subsequently fired Newman for absenteeism, inability to complete projects, and rudeness to customers and staff. At the time of her termination, Newman was permitted to retrieve personal information from her computer.

On December 19, 1992, Engert filed criminal charges against Newman, alleging she had destroyed valuable computer files on the day of her discharge when she was permitted to take personal information from the computer. After a hearing, the magistrate found probable cause to issue an arrest warrant for the crime of computer trespass. Biven agreed to accept $450 in restitution rather than prosecute further. Because Newman paid the restitution, the magistrate did not issue the arrest warrant and dismissed the charge.

1. Biven argues that the trial court erred in denying its motion for directed verdict on the intentional infliction of emotional distress claim because Newman presented insufficient proof of extreme or outrageous conduct. We agree.

"Four elements must be present to support a claim of intentional infliction of emotional distress: (1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. [Cit.]" *Johnson v. Savannah College &c.*, 218 Ga. App. 66, 67 (460 SE2d 308) (1995). Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered "a common vicissitude of ordinary life." *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (2) (404 SE2d 442) (1991). Liability for intentional infliction of emotional distress " 'has been found only where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' [Cits.]" *Yarbrough v. SAS Systems*, 204 Ga. App. 428, 429 (3) (419 SE2d 507) (1992). The issue of whether the allegations rise to the requisite level of outrageousness is a question of law for the trial court. *Johnson*, supra.

The evidence of intentional infliction of emotional distress in this case fails to rise to the requisite level of outrageousness. Viewed in a light to support the verdict, the evidence at trial supporting Newman's claim showed that Engert spoke to her in a rude tone and condescending manner, belittled her, was critical of her work, and imposed unreasonable deadlines. Newman also testified that Marino was jealous and tried to establish her control over the office. Newman asserted that she was under great stress at Biven because she worked long hours and had to leave a number where she could be reached at all times. In addition, she claimed that Harrison showed a disregard for their relationship by his absence when Engert discharged her and by stating she did not have "any f. . .ing rights" when she demanded additional compensation after her termination. She further asserted that her discharge after working so hard and the initiation of criminal proceedings against her caused her emotional distress.

Biven's treatment of Newman while she was still employed did not constitute outrageous conduct. "Despite [Newman's] arguments to the contrary, it is clear that the language used by [Engert and Harrison] consisted either of expressions of dissatisfaction with [her] job performance or suggestions that if [she] did not improve [her] job performance [she] might be terminated. . . ." *Sossenko v. Michelin Tire Corp.*, 172 Ga. App. 771, 772 (324 SE2d 593) (1984). These allegations, considered individually or collectively, are insufficient to support a claim that Biven's conduct was extreme and outrageous. Id. at 773. The incidents which occurred at Biven during the course of Newman's employment cannot reasonably be characterized as atrocious or " 'utterly intolerable in a civilized community.' " *Yarbrough*, supra at 429.

Neither do Biven's actions in terminating Newman constitute outrageous conduct. The record shows, and Newman does not contest, that at the time she was terminated she "was an at-will employee who could be terminated with or without cause and without regard to the motives of [her] employer. [Cit.] Accordingly, 'that [Biven] discharged [Newman] for whatever reason, without more, gives rise to no claim for the intentional infliction of emotional dis-

tress.' [Cit.]" *Phillips v. Pacific & Southern Co.*, 215 Ga. App. 513, 515 (451 SE2d 100) (1994).

Furthermore, Biven's criminal prosecution of Newman cannot provide a basis for her claim. The magistrate's finding of probable cause forecloses Newman's use of the criminal prosecution as an element of a cause of action. See OCGA §§ 51-7-40, 51-7-44; *Wal-Mart Stores v. Blackford*, 264 Ga. 612 (449 SE2d 293) (1994); *Lolmaugh v. T.O.C. Retail,* 210 Ga. App. 605 (2) (436 SE2d 708) (1993). Furthermore, because Newman settled Biven's claim concerning the computer files, she is estopped from denying that Biven had probable cause to file the charges. *Commercial Plastics &c. Corp. v. Molen*, 182 Ga. App. 202, 204 (1) (355 SE2d 86) (1987). Because Biven had probable cause, its actions in filing the charges were not outrageous.

Finally, although Newman relies heavily on her allegations that Biven threatened retaliation if she claimed benefits and fabricated evidence in the criminal prosecution, she cites no evidence in the record to support these allegations. Absent any such citation, Newman is deemed to consent to a decision based upon Biven's statement of facts. Court of Appeals Rule 27 (b) (1). See also *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733-734 (8) (389 SE2d 251) (1989) (it is not the court's function to cull the record on behalf of a party).

We thus conclude that the evidence in this case was insufficient to support Newman's claim for intentional infliction of emotional distress. *Evans*, supra. Accordingly, the trial court erred in denying Biven's motion for directed verdict on this claim.

2. Biven asserts that the trial court erred in denying its motion for a directed verdict on Newman's claim that Biven breached the employment agreement by refusing to make her a full-time employee and pay her the benefits associated with that status. Because the promises made to Newman were merely executory obligations which were unenforceable as part of her terminable-at-will contract, we agree that the trial court should have directed a verdict.

As we stated in Division 1, the evidence at trial showed that Newman was an at-will employee. There is no evidence that the contract contained any definite term of employment, and under Georgia law such a contract "is terminable at the will of either party. [Cits.]" *Wheeling v. Ring Radio Co.*, 213 Ga. App. 210, 211 (444 SE2d 144) (1994). "In a terminable-at-will employment contract the original terms for compensation are enforceable for that work actually performed under the contract. However, a promise of future change in compensation is unenforceable since neither party is bound to continue performance under the contract at all." *E. D. Lacey Mills v. Keith,* 183 Ga. App. 357, 361 (6) (359 SE2d 148) (1987).

Furthermore, the terms which created the condition precedent to Biven making Newman a full-time employee were too vague and

indefinite to be enforceable. The only evidence supporting Newman's claim for additional compensation was her testimony that Biven promised to make her a full-time employee "later," further "down the line," "when we get more money." Newman has failed to cite any evidence explaining what these conditions mean or showing the intention of the parties. In the absence of such evidence "we can see no basis upon which to place a reasonable, commonsense conclusion. The indefinite and uncertain condition nullified the whole contract." (Citation and punctuation omitted.) Id. at 362. Accordingly, the trial court erred in failing to grant Biven's motion for directed verdict on this claim.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JUNE 17, 1996 —
RECONSIDERATION DENIED JULY 8, 1996 — 

*Kilpatrick & Cody, Thomas C. Harney, Michael E. Brooks*, for appellants.
*Bruce A. Hagen*, for appellee.
Emilie S. Newman, *pro se.*