529 S.E.2d 144 (2000)
242 Ga. App. 58
JARRARD et al.
v.
UNITED PARCEL SERVICE, INC.
No. A99A1871.
Court of Appeals of Georgia.
January 25, 2000.
Certiorari Denied June 9, 2000.
*146 Orr & Orr, E. Wycliffe Orr, Kristine E. Orr, Gainesville, for appellants.
Arnold & Anderson, John G. Skinner, Atlanta, for appellee.
*145 MILLER, Judge.
Based on psychic injury caused by a harsh and ill-timed job evaluation, Michael Jarrard sued his employer United Parcel Service, Inc. ("UPS") for intentional infliction of emotional distress and was joined by his wife who asserted a derivative claim for loss of consortium.[1] UPS successfully moved for summary judgment on both claims on the ground that its conduct was not extreme and outrageous, which ruling the Jarrards appeal. The issue for this court is a question of law:[2] whether giving a harsh performance evaluation on the day an employee returns from extended psychiatric care and continuing that interview despite the employee's tearful entreaties for a postponement rise to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress. We are constrained to hold that such conduct does not and affirm.
Construed in favor of the plaintiff, the evidence showed that on his first day back from six weeks of medical leave,[3] Jarrard received a stinging evaluation of his job performance at UPS for the three months preceding the leave. Specifically, in a twenty-page evaluation form covering numerous topics, Jarrard received grades of two or three on a scale of zero to six, whereas his prior evaluations were primarily ranks of five or six.[4] Jarrard disagreed with the rankings given him. The harsh evaluation was apparently in retaliation for past conflicts between Jarrard and management and would normally have taken place during the time Jarrard was out on leave.
Even though the evaluating UPS supervisor knew that the leave had been for psychiatric care, and even though during the interview Jarrard repeatedly begged in tears that the evaluation be postponed because of his mental weakness, the supervisor insisted, on penalty of termination and with a smirk, that Jarrard remain and receive the full oral review of the written evaluation, which took about 20 minutes. The supervisor questioned his loyalty and integrity. As a result of the oral review, Jarrard experienced a complete mental breakdown from which he has not recovered.
Pretermitting the issue (not raised below) whether this claim was exclusively the province of the Workers' Compensation Act,[5] we first address the four essential elements of an action for intentional infliction of emotional distress: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe."[6]
The second element of extreme and outrageous conduct is the issue here. Biven Software v. Newman[7] explained that derogatory comments in the employment context generally do not fall into this category:
Comments made within the context of one's employment may be horrifying or *147 traumatizing, but are generally considered a common vicissitude of ordinary life. Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[8]
Peoples v. Guthrie[9] emphasized that the conduct "must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress."[10] Such does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living.[11] Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.[12]
"[P]erformance evaluations are a recognized aspect of any employment,"[13] and regardless of their brutal harshness do not constitute extreme and outrageous conduct. Just as "an employer's termination of an employeehowever stressful to the employeegenerally is not extreme and outrageous conduct,"[14] so the lesser act of an employer's giving a poor job evaluationhowever stressful to the employeemust be held to be an expected, common business event that does not constitute extreme and outrageous conduct. "Sharp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community."[15]
The law is clear that performance evaluations critical of an employee do not fall into the outrageous category even though (i) given in crude and obscene language,[16] (ii) done with a smirk,[17] (iii) conducted in a belittling, rude, and condescending manner to embarrass and humiliate the employee,[18] (iv) given at a poor time,[19] (v) tinged with the intent to retaliate for former conflicts,[20] and (vi) constituting a false accusation of dishonesty or lack of integrity.[21]
*148 The Jarrards focus much of their argument on evidence of malicious motives of UPS to retaliate for former conflicts between Jarrard and UPS management about demotions, transfers, and following through on company promises. This pertains, however, to the first element of the tort (acting intentionally or recklessly) and does not address the second element of whether the conduct was itself extreme and outrageous. Citing the Restatement (Second) of Torts, § 46, Bowers v. Estep explained:
It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been [extreme and outrageous].[22]
The Jarrards quite correctly point out that in determining whether conduct is extreme and outrageous a court should also consider (i) the existence of a relationship in which one person has control over another such as an employer-employee relationship and (ii) whether the defendant knew of the victim's particular susceptibility to emotional distress.[23] Such factors may produce a character of outrageousness that otherwise might not exist.[24]
Nevertheless, there is a caveat to these factors: "[i]t must be emphasized that major outrage in the language or conduct complained of is essential to the tort."[25] Accordingly, the conduct must inherently have an element of outrageousness or extreme wrongfulness. Based on this reasoning, we have repeatedly upheld summary adjudications in favor of the defendant where the conduct had no such element, even though the defendantwho had a controlling relationship over the plaintiffwas aware of the plaintiff's delicate mental condition at the time of the incident.[26]
The cases cited by the Jarrards are distinguishable. There is something innately outrageous with telling an employee to not testify against the company or she will lose her job and then enforcing that very threat.[27] There is something inherently outrageous with repeatedly subjecting an employee to sexually harassing comments and behavior over a lengthy period of time, when she constantly objects to such.[28] The same is true of repeatedly abusing and threatening an employee over a lengthy period of time, and to then end that relationship with yet *149 more threats and intimidation.[29] And there is something innately outrageous with a pharmacist knowingly making false accusations of drug fraud against an emotionally fragile customer and having her wrongfully arrested at the pharmacy.[30]
On the other hand, there is nothing inherently outrageous with subjecting an employee to a straightforward if harsh evaluation of his job performance,[31] regardless of its timing. Forthright evaluations are to be expected, indeed encouraged. Perhaps it is Christmas, and a firing or poor job evaluation would devastate the employee who may be known to be experiencing holiday depression.[32] Such may be poorly timed;[33] it may be tactless and insensitive;[34] it may be rude, inconsiderate, and unkind.[35] But a negative performance review is not innately wrong or outrageous and is certainly less negative than an outright termination, which is not outrageous conduct under Georgia law.[36] Georgia recognizes negative evaluations as one of the common vicissitudes of ordinary life.[37]
Based on these cases, a single brutal evaluation cannot rise to the "outrageous" level even though the employee is experiencing emotional problems at the time of the evaluation and the employer is aware of such.[38] Every employee is expected to appreciate that poor job evaluations are possible and could jeopardize promotions and continued employment. Moreover, when, as here, the employee returns to the job with a medical evaluation that sets forth no restrictions and that states he is medically stable, then the employer (who has no medical degree) cannot be expected to exempt that employee from the same rigors of job evaluations that all other employees experience.
Despite the severity of Jarrard's damages, we are constrained to hold that the trial court correctly granted summary judgment in favor of UPS.
Judgment affirmed.
POPE, P.J., and RUFFIN, J., concur.
NOTES
[1] Jarrard also asserted a count under the Americans with Disabilities Act, 42 USC § 12101 et seq., but he has not appealed the entry of summary judgment on this count.
[2] See Yarbray v. Southern Bell Tel. &c. Co., 261 Ga. 703, 706(2), 409 S.E.2d 835 (1991); United Parcel Svc. v. Moore, 238 Ga.App. 376, 377, 519 S.E.2d 15 (1999).
[3] Jarrard's treating psychiatrist certified him to return to work as "medically stable" with no restrictions.
[4] Rating guidelines defined each ranking: zero must improve before next evaluation; one needs a lot of improvement; twoneeds some improvement; threemeets nearly all expectations; fourmeets all expectations; fivemeets all expectations, exceeds most; sixexceeds all expectations.
[5] Cf. Hennly v. Richardson, 264 Ga. 355-356(1), 444 S.E.2d 317 (1994).
[6] (Citations and punctuation omitted.) Moore, supra, 238 Ga.App. at 377, 519 S.E.2d 15; see Bridges v. Winn-Dixie Atlanta, 176 Ga.App. 227, 230(1), 335 S.E.2d 445 (1985).
[7] 222 Ga.App. 112, 113-114(1), 473 S.E.2d 527 (1996).
[8] (Citations and punctuation omitted.) Id. See Moore, supra, 238 Ga.App. at 377, 519 S.E.2d 15.
[9] 199 Ga.App. 119, 121(2), 404 S.E.2d 442 (1991).
[10] (Citations and punctuation omitted; emphasis in original.) Id. See Moses v. Prudential Ins. Co. &c., 187 Ga.App. 222, 225, 369 S.E.2d 541 (1988).
[11] Moore, supra, 238 Ga.App. at 377, 519 S.E.2d 15.
[12] Peoples, supra, 199 Ga.App. at 121(2), 404 S.E.2d 442.
[13] Wiggins v. Browning, Civil Action No. 6:XX-XXXX-XAK, 1994 U.S. Dist. LEXIS 20229, slip op. at 14 (D.S.C.1994).
[14] Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir.1993); see ITT Rayonier, Inc. v. McLaney, 204 Ga.App. 762, 764(1), 420 S.E.2d 610 (1992) ("at-will employment can be terminated for any or no reason [and thus] gives rise to no claim for the intentional infliction of emotional distress") (citations and punctuation omitted); Borden v. Johnson, 196 Ga.App. 288, 290-291(2), 395 S.E.2d 628 (1990).
[15] (Citations omitted.) Moore, supra, 238 Ga. App. at 378, 519 S.E.2d 15.
[16] ITT Rayonier, supra, 204 Ga.App. at 763(1), 765(2), 420 S.E.2d 610 (crude, obscene, and profane language); see Cooler v. Baker, 204 Ga.App. 787, 788(1), 420 S.E.2d 649 (1992) (alleged foul and abusive language); Bridges, supra, 176 Ga. App. at 231(1), 335 S.E.2d 445 (could have been more tactful).
[17] See Douglas v. Dabney S. Lancaster &c. College, 990 F.Supp. 447, 465(D)(3) (W.D.Va.1997).
[18] Biven Software, supra, 222 Ga.App. at 114(1), 473 S.E.2d 527; Johnson v. Savannah College of Art &c., 218 Ga.App. 66, 67, 460 S.E.2d 308 (1995) (employee was betrayed, belittled, maligned, humiliated, and saddened); Bowers v. Estep, 204 Ga.App. 615, 618(2), 420 S.E.2d 336 (1992) (employer threatened and intimidated employee about his emotional condition in a manner that embarrassed and humiliated him).
[19] See Clark v. City of Zebulon, 156 F.R.D. 684, 698(3)(a) (N.D.Ga.1993) (terminated just before Christmas).
[20] Sossenko v. Michelin Tire Corp., 172 Ga.App. 771, 324 S.E.2d 593 (1984) (retaliation for reporting manufacturing defects); see Odem v. Pace Academy, 235 Ga.App. 648, 655(2), 510 S.E.2d 326 (1998); cf. Biven Software, supra, 222 Ga.App. at 114(1), 473 S.E.2d 527 (supervisor acted out of jealousy).
[21] Peoples, supra, 199 Ga.App. at 121(2), 404 S.E.2d 442; see ITT Rayonier, supra, 204 Ga. App. at 763(1), 420 S.E.2d 610; cf. Mundy v. Southern Bell Tel. &c. Co., 676 F.2d 503, 504 (11th Cir.1982) (inaccurate and unsupported negative evaluation); Avallone v. Wilmington Med. Center, 553 F.Supp. 931, 938(V) (D.Del. 1982) (false negative job evaluation).
[22] (Citations and punctuation omitted.) Bowers, supra, 204 Ga.App. at 618(2), 420 S.E.2d 336; see Odem, supra, 235 Ga.App. at 654-655(2), 510 S.E.2d 326; cf. Peoples, supra, 199 Ga.App. at 121(2), 404 S.E.2d 442 (it is not enough that defendant's conduct was wilful and wanton); Moses, supra, 187 Ga.App. at 225, 369 S.E.2d 541 (it is not enough that defendant's conduct is intentional or that it is wilful and wanton).
[23] See Bridges, supra, 176 Ga.App. at 230(1), 335 S.E.2d 445.
[24] Id.
[25] (Citation and punctuation omitted.) Id. See Gordon v. Frost, 193 Ga.App. 517, 522(1), 388 S.E.2d 362 (1989).
[26] See Harris v. Leader, 231 Ga.App. 709, 712(1)(b), 499 S.E.2d 374 (1998) (psychiatrist who expresses personal sexual fantasies to client not liable despite his knowledge of her susceptibility to emotional distress); Bowers, supra, 204 Ga.App. at 616, 618, 420 S.E.2d 336 (even though employer knew of employee's depression and severe claustrophobia and intentionally harassed and belittled him until he broke down and was admitted to a psychiatric clinic, no liability for intentional infliction of mental distress); Bridges, supra, 176 Ga.App. at 231(1), 335 S.E.2d 445 (even though employer knew of employee's low emotional threshold brought on by her multiple sclerosis, no liability for insensitive and tactless demands for polygraph and for termination based on her refusal to cooperate).
[27] See Yarbray, supra, 261 Ga. at 706(2), 409 S.E.2d 835.
[28] See Trimble v. Circuit City Stores, 220 Ga.App. 498, 499, 469 S.E.2d 776 (1996); Coleman v. Housing Auth. of Americus, 191 Ga.App. 166, 168-169(1), 381 S.E.2d 303 (1989).
[29] Anderson v. Chatham, 190 Ga.App. 559, 566-567(8), 379 S.E.2d 793 (1989).
[30] See Gordon, supra, 193 Ga.App. at 519-520(1), 388 S.E.2d 362.
[31] See generally Lively v. McDaniel, 240 Ga.App. 132, 134(2), 522 S.E.2d 711 (1999) ("Defamatory or derogatory remarks regarding one's employment generally do not rise to this level.") (citations omitted); Hendrix v. Phillips, 207 Ga.App. 394, 396(1), 428 S.E.2d 91 (1993); Sossenko, supra, 172 Ga.App. at 772, 324 S.E.2d 593.
[32] See City of Zebulon, supra, 156 F.R.D. at 698(3)(a).
[33] But is there ever a good time for an employee to undergo an unfavorable performance review?
[34] See Bridges, supra, 176 Ga.App. at 231(1), 335 S.E.2d 445 (employer could have been more tactful and sensitive).
[35] See Peoples, supra, 199 Ga.App. at 121(2), 404 S.E.2d 442.
[36] See ITT Rayonier, supra, 204 Ga.App. at 764(1), 420 S.E.2d 610.
[37] See Peoples, supra, 199 Ga.App. at 121(2), 404 S.E.2d 442.
[38] Accord Bowers, supra, 204 Ga.App. at 618, 420 S.E.2d 336 (depression); Bridges, supra, 176 Ga.App. at 231(1), 335 S.E.2d 445 (lower emotional threshold caused by multiple sclerosis); cf. Bute v. Schuller Intl., 998 F.Supp. 1473, 1478(II)(C) (N.D.Ga.1998) (refusal to allow employee to return to work following back surgery is not egregious or outrageous).