[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15055
Non-Argument Calendar
_____

D. C. Docket No. 02-02430-CV-WSD-1

CRAIG GALLOWAY,

Plaintiff-Appellant,

versus

GA TECHNOLOGY AUTHORITY,
State of Georgia,
DEPARTMENT OF ADMINISTRATIVE SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(MAY 16, 2006)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Craig Galloway, a white male, appeals pro se the summary judgment granted

in favor of his former employers, the Department of Administrative Services

(DOAS) and the Georgia Technology Authority (GTA) regarding Galloway's complaint of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, retaliation in violation of both the Americans with Disabilities Act and the Family Medical Leave Act, and intentional infliction of emotional distress under Georgia law. We affirm.

## I. STANDARD OF REVIEW

We review de novo the grant of a motion for summary judgment. Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review for an abuse of discretion the application of local rules by the district court. See Brown v. Thompson, 430 F.2d 1214, 1215-16 (5th Cir. 1970).

## II. DISCUSSION

At the outset, we note that although Galloway mentions his disparate treatment claims under Title VII and recites some of the facts regarding those claims, he does not make any arguments as to the merits of his disparate treatment claims. Although Galloway lists facts that he believes constitute violations of the

FMLA, he does not argue the merits of his interference claims. Galloway purports to raise the issue whether the magistrate judge erred by finding that the defendants' statement of facts was uncontroverted, but Galloway did not offer an argument on this issue. Finally, Galloway did not address the findings of the district court that he abandoned his race discrimination claim under Title VII, that he was not disabled under the ADA, or the resolution of his section 1983 and defamation claims. Because Galloway fails to make any of these arguments on appeal, we consider them waived. See Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003); Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002).

Galloway raises four issues on appeal. First, Galloway contends that the district court erred when it found that he failed to show that the reasons for the denial of a pay raise, the denial of promotion, and his termination were pretext for retaliation and that the other alleged retaliatory conduct were not adverse employment actions. Second, Galloway argues that the district court erred when it found that the alleged sexually harassing conduct was not sufficiently severe or pervasive to alter the terms and conditions of his employment. Third, Galloway argues that the district court erred when it found that his employer's conduct was not extreme and outrageous and granted summary judgment on his claim of intentional infliction of emotional distress. Finally, Galloway contends that the

3

district court abused its discretion in its treatment of Galloway's pro se pleadings. We address each issue in turn.

*A. Retaliation Claims*

Galloway lists a multitude of facts that he contends constitute retaliation for his complaints regarding gender discrimination in violation of Title VII, requests for accommodations in violation of the ADA, and his FMLA leave. Galloway identifies the following as adverse employment actions that affected the terms and conditions of his employment: (1) he was excluded from meetings and training and development; (2) he was not provided with the recruiting tools that were promised when he accepted the position, and his "Net-Temps" recruiting tool was taken away; (3) he did not receive a promised pay increase in 1999; (4) he was given retaliatory reprimands and lower evaluations than his actual performance merited; (5) separate rules were imposed on him; (6) he was not promoted to the position of Human Resources Officer; (7) he was exposed to a hostile work environment; (8) he lost his teleworking privileges; and (9) he was terminated.

Galloway argues that he presented sufficient evidence of pretext. He contends that each time he engaged in protected activity under either Title VII, the ADA or the FMLA, his employer retaliated against him. Galloway further contends that his employer prepared to fire him when it took the following actions:

4

(1) hiring Audrey Hines as a Human Resources Consultant, which was also his position; (2) forcing Galloway to train other Human Resource Consultants how to recruit; (3) denying Galloway training; (4) assigned an attorney to respond to Galloway's requests under the ADA and requests for FMLA leave; (5) conditionally authorizing Galloway's FMLA leave so that Galloway could be examined by another doctor for a second opinion; (6) failing to renew Galloway's state association membership; (7) requiring Galloway to see Dr. Davis, a forensic psychologist frequently used by the state in litigation; and (8) refusing to allow Galloway's mother to reschedule his appointment with Dr. Davis. He argues that this evidence establishes that his employer intended to terminate him before he failed to attend the required medical examination, which was the stated reason for his termination.

To establish a prima facie case of retaliation under Title VII, the ADA and the FMLA, Galloway must show that he (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002); Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the

5

employee's compensation, terms, conditions, or privileges of employment, that deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (internal quotation marks and citation omitted). "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." Id. (internal citations omitted). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action[,]" . . . and "Title VII[ ] is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238-39 (11th Cir. 2001) (internal quotations and citations omitted).

"Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If that burden is met, the plaintiff then bears the ultimate burden of proving, by a preponderance of the evidence, that the reason is a pretext for retaliatory conduct. Id. "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on

6

and rebut it." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (internal citation omitted).

Galloway alleges nine adverse employment actions. The district court concluded that three constituted adverse employment actions, but that Galloway did not establish that his employer's articulated reasons for the actions were pretextual. As to the other alleged adverse employment actions, the district court concluded that the actions did not constitute adverse employment actions because they did not alter the terms of Galloway's employment. We first address the actions that constitute adverse employment actions and then address the other employment actions alleged by Galloway.

### 1. Denial of Pay Raise, Denial of Promotion, and Termination

It is clear that the denial of a pay raise, the denial of a promotion, and a termination constitute adverse employment actions. See, e.g. Walker v. Mortham, 158 F.3d 1177, 1178 (11th Cir. 1998); Gupta, 212 F.3d at 590. Although these decisions qualify as adverse employment actions, it is not clear that Galloway established a prima facie case of retaliation regarding any of them. Even if we assume that Galloway established a prima facie case, his complaint still fails.

The DOAS and GTA articulated a legitimate reason for each adverse employment action. First, Galloway was not given a pay raise because employees

7

were not given pay raises in their first year of employment. Second, Galloway was not promoted to the Human Resource Officer position because he was not as qualified as the individual who received the position. Finally, Galloway was terminated because he failed to attend a required medical examination regarding his FMLA leave. The burden then shifted back to Galloway to establish that these reasons were pretexts for retaliation. See id.

Galloway failed to meet his burden. Other than his bald assertions, Galloway offered no evidence that the stated reasons for the adverse employment actions were pretextual. Galloway did not contest that employees were not given pay raises during their first year of employment, the individual given the Human Resources Officer position was more qualified, and Galloway did not attend the required medical examination. Because Galloway failed to establish that his employer's reasons for the denial of the pay raise, denial of the promotion, and his termination, were pretext for retaliation in violation of Title VII, the ADA, or the FMLA, the district court correctly granted summary judgment on these claims.

## 2. Other Employment Actions

Regarding the other alleged employment actions, the district court properly concluded that none rise to the level of adverse employment actions. Simply put, there is no evidence than any of these employment actions had any tangible effect

8

on Galloway's employment. See Davis, 245 F.3d at 1239. Galloway's subjective belief that he was being unfairly denied benefits is insufficient, and Galloway offers no argument as to how these alleged adverse employment actions were sufficiently material and serious to alter the terms and conditions of his employment. As such, Galloway failed to establish a prima facie case of retaliation regarding these employment actions, and the district court correctly granted summary judgment on these claims of retaliation.

*B. Sexual Harassment*

Galloway argues that he was subjected to an objectively hostile work environment because of his sex. As evidence of the hostile work environment, Galloway testified about the following four categories of comments: (1) comments that men were unable to do tasks assigned to them; that men were "abusive," "insensitive," "jerks," and "stupid"; that "penises" were not allowed in the group; and that men should be screened out from the workplace; (2) discussions about mutilating men's genitals; (3)"male-bashing material, offensive pornographic material, [and] sexist comments[, including] references to seeing his butt in a pair of jeans"; and (4) comments about Galloway's intelligence. Galloway argues that these comments, coupled with the fact that his female co-workers were treated better than he was, established an "anti-male bias" in the workplace.

9

To establish a prima facie case of sexual harassment, an employee must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on his sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the terms or conditions of employment and to create a discriminatorily abusive working environment; and (5) the defendant is responsible for such environment under either a theory of vicarious or direct liability. Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003). The employee must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted). "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's

10

job performance." Id. at 1276. Moreover, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998) (citation omitted).

Galloway failed to establish a prima facie case of sexual harassment because the alleged comments were not sufficiently severe or pervasive to alter the terms and conditions of his employment. Although the alleged comments were arguably frequent and may have been juvenile, crude, and unprofessional, the comments were not physically threatening or humiliating. Most of the comments were not addressed at Galloway, and were made by co-workers, not his supervisors. Most importantly, the record is devoid of any evidence that the alleged comments altered the terms and conditions of Galloway's employment. Galloway's allegations fall far short of the threshold requirement that harassment be severe and pervasive. The district court correctly granted summary judgment against Galloway's claim of sexual harassment.

### C. Intentional Infliction of Emotional Distress

Galloway argues that his supervisors continued their behavior of "male-bashing" and retaliation with the knowledge that he was susceptible to emotional distress. The DOAS and GTA respond that district court properly granted

11

summary judgment because the conduct alleged by Galloway was not extreme and outrageous under Georgia law. We agree with DOAS and GTA.

For an employee to prevail on a claim of intentional infliction of emotional distress under Georgia law, he must demonstrate that (1) the employer's conduct was extreme and outrageous; (2) the employer acted recklessly or intentionally; (3) the conduct of the employer caused emotional distress; and (4) the emotional distress was severe. Lightning v. Roadway Exp., Inc., 60 F.3d 1551, 1558 (11th Cir. 1995). Georgia courts have imposed liability only when the employer's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Biven Software, Inc. v. Newman, 473 S.E.2d 527, 529 (Ga.App. 1996). Derogatory comments made in the workplace generally do not rise to this level and are usually considered "a common vicissitude of ordinary life." Jarrard v. United Parcel Serv., 529 S.E.2d 144, 146 (Ga.App. 2000).

Galloway failed to establish that his supervisors' conduct was so extreme or outrageous that a reasonable person would find it atrocious and intolerable in a civilized society. See Biven Software, Inc., 473 S.E.2d at 529-30. His following allegations fell far short of that standard: (1) complaints being met with hostility;

12

(2) being moved to a small and messy cubicle; (3) comments about the tidiness of his workspace; (4) being shown a pornographic photograph; and (5) being asked whether he enjoyed his vacation, although he was at a funeral. Most of this conduct amounts to nothing more than insensitive or inconsiderate actions by co-workers and is not actionable under Georgia law. See Jarrard, 529 S.E.2d at 147. Although daily sexual harassment, if severe and pervasive, could be considered extreme and outrageous, Galloway did not establish severe or pervasive sexual harassment. The district court correctly granted summary judgment on this claim.

### D. Pro Se Status

Galloway argues that, by requiring him to comply with Local Rule 56.1(B)(2)(a), the magistrate judge failed to construe his pleadings liberally. Galloway contends that he highlighted a litany of discriminatory and retaliatory acts and submitted evidence in support of his claims, and argues that the magistrate judge trivialized his claims and ignored key pieces of evidence. We disagree.

Although "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and" are "liberally construed," Trawinski v. United Techs., 313 F.3d 1295, 1297 (11th Cir. 2002), pro se litigants still must comply with the procedural rules governing the proper form of pleadings. McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993). "[L]ocal rules are

13

effective unless modified or abrogated by the judicial council of the relevant circuit." Brown v. Crawford County, Ga., 960 F.2d 1002, 1009 n.10 (11th Cir. 1992) (internal quotations omitted). The district court did not abuse its discretion when it applied the local rules.

Under Local Rule 56.1 of the Northern District of Georgia, a party moving for summary judgment must include "a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried." L.R. 56.1(B)(1). The district court deems the movant's facts admitted unless the opposing party either refutes the facts with citations to evidence or law or states a valid objection to the movant's evidence. L.R. 56.1(B)(2)(a). Galloway was aware of and understood the local rules of the district court as he cited to them when he requested extensions of time.

Under Local Rule 56.1, Galloway's response to the statement of facts of his former employer was wholly inadequate. He did not cite any evidence in the record and did not refute the statements of fact that he denied. Even though Galloway failed to follow the local rules, the 84-page report and recommendation of the magistrate judge thoroughly addressed Galloway's numerous claims and cited to both record evidence and Galloway's brief.

Throughout this litigation, the district court treated Galloway with leniency

14

and respect, but the court was not required to act as Galloway's <u>de</u> <u>facto</u> counsel. The district court provided Galloway over two years to conduct discovery and granted a generous extension to respond to the motion for summary judgment filed by Galloway's former employer. The district court treated Galloway's pleadings liberally and did not abuse its discretion.

## III. CONCLUSION

The summary judgment of the district court is **AFFIRMED.**