Joyce Gulledge HARRIS, Plaintiff,

v.

FULTON–DEKALB HOSPITAL AUTHORITY, et al., Defendants.

No. 1:00–CV–3321–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

March 27, 2002.

Karen Brown Williams, The Williams Firm, Monica Emmons Ewing, Office of Monica Emmons Ewing, James Edgar Holmes, Law Offices of Monica E. Ewing, Atlanta, GA, for Plaintiff.

Charles Spurgeon Johnson, III, Mary Ann B. Oakley, Rachel Colleen Boring, Holland & Knight, Atlanta, GA, for Defendants.

## ORDER

THRASH, District Judge.

This is an employment discrimination action in which Plaintiff asserts causes of action for sexual harassment, gender and race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* denial of due process pursuant to 42 U.S.C. § 1983; as well as state law claims for negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress and invasion of privacy. It is before the Court on Report and Recommendation [Doc. 41] of the Magistrate Judge recommending granting in part and denying in part the Defendants' Motion for Summary Judgment [Doc. 19]. For the reasons set forth below, the Court declines to adopt that portion of the Report and Recommendation recommending denying the Defendants' motion with respect to the Plaintiff's retaliation and intentional infliction of emotional distress claims.

## I. BACKGROUND

The facts of this case are set out in the Report and Recommendation of Magistrate Judge Alan J. Baverman. For convenience, these facts are restated here.

The parties agree that Plaintiff Joyce Gulledge Harris was first employed at Grady Memorial Hospital in 1994 as Vice President of Human Resources and that she became Senior Vice President of Human Resources a few months later.[1] They also agree that Defendant Edward Renford, the President/Chief Executive Officer of Grady Health System, terminated her on December 9, 1998. They do not agree, however, about much that occurred in between.

The parties' factual statements paint very different pictures of Plaintiff's tenure at Grady. For instance, Plaintiff and a number of witnesses on her behalf assert that she "related well with and supported her employees and was an even-tempered and objective manager" and that "[a]lthough she disagreed with Defendant Renford from time to time on various issues, she did so respectfully and executed directives given." Defendants and their witnesses, on the other hand, contend that Plaintiff had "a difficult time dealing with authority" and that she did not get along well with Defendant Renford and made comments to him such as, "If you know so much, handle it yourself." She allegedly frequently showed a lack of respect for him by stating that she would not follow his directives, raising sensitive topics in public meetings, and by talking about him to other employees in sarcastic tones. Defendants assert that Plaintiff also had trouble relating with in-house and outside attorneys while performing her human resources/personnel duties.

---

**1.** As Defendants note, Plaintiff's statement of facts as to which she contends there are genuine issues to be tried does not conform to Local Rule 56.1(B)(2), N.D. Ga., which requires the respondent to a summary judgment motion to "attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried." Plaintiff's statement of facts is a rambling recitation in narrative form. The undersigned, however, will consider it in ascertaining the relevant facts in the record.

Plaintiff, meanwhile, asserts that it was Defendant Renford who treated her disrespectfully. She claims that he made suggestive and inappropriate sexual comments to her, such as saying that she had "gorgeous brown eyes" and "soft gentle hands" while "roaming his eyes over her body and giving Plaintiff the sense that he was 'undressing' her with his eyes." She also says that he made inappropriate comments about himself, such as calling himself "Big Ed," which she took to be a reference to the size of his penis,[2] and telling Plaintiff that, if he ever got divorced, she would be at his "beck and call." She also asserts that Defendant Renford often "hugged her, stroked her and otherwise touched her suggestively and inappropriately." He also allegedly inquired about her private life, asking about the "type of men" she was dating, how she "treated" these men, and how she believed she could better "please" the men in her life.

In her deposition, Plaintiff testified that Defendant Renford made the suggestive and inappropriate comments about her physical characteristics during the first two or three years of her employment, from 1994 through 1997. (Dep. of Joyce Harris, pp. 170–71). She also testified that the "Big Ed" comment was made around 1996 or 1997 and that the "beck and call" statement was made before that. (Dep. of Joyce Harris, p. 173). She testified that the questions about her private life began shortly after she started working there and that she could not remember when they stopped. (Dep. of Joyce Harris, p. 176). In a document she submitted to the Equal Employment Opportunity Commission ("EEOC") titled "Response to EEOC Charge," and dated May 21, 1999, Plaintiff asserted that he stopped asking her for hugs "during approximately the last 18 months of [her] employment." (Dep. of Joyce Harris, p. 11).

She asserts that, because she did not react positively to these comments, Defendant Renford denied her a pay increase in 1995; frequently denied her requests to use vacation time, with the latest such denial coming in the summer of 1998; denied a tuition reimbursement in 1997; and conducted a year-long "investigational vendetta" against her department in 1996–97. She also alleges that he was frequently rude, hostile and abusive to her and that he intentionally sought to embarrass her in front of other executives. She finally alleges that he retaliated against her in an unspecified way for publicly "speaking out against policies and procedures contrary to applicable federal or state law, rules and regulations, including *inter alia*, the letting of a contract to a State Senator in 1995 or 1996 without following proper procedures." (Affidavit of Joyce Harris, ¶ 4).

Another Grady employee, Christine Swainson, filed a discrimination lawsuit against the Authority. The Plaintiff was also named as a defendant in that lawsuit. It is undisputed that Plaintiff was a material witness in the Swainson litigation and that she had been involved in the exchange of memoranda with Ms. Swainson, which led to Ms. Swainson's termination. It is also undisputed that Plaintiff was deposed by Ms. Swainson's counsel. During the deposition, Plaintiff testified that she herself may have been a victim of discrimination, but then refused to answer any further questions from Ms. Swainson's lawyer

---

**2.** This alleged incident is reported differently in various places by both parties. In her deposition, Plaintiff testified that she called him "the big man on campus" and he responded, "How do you know?" (Dep. of Joyce Harris, p. 171).

about it, causing the deposition to be adjourned. She also later refused to answer any questions about her allegation either from Defendants' attorneys or from another team of independent attorneys who were hired by Grady to investigate her claim of discrimination. (Affidavit of Randy Gepp., ¶¶ 5–10).

Plaintiff denies that she testified that she may have been a discrimination victim but asserts that she said, "I had thought about some things" when asked if she had ever been the victim of discrimination. She acknowledges, however, that she repeatedly refused to answer the same question about her being discriminated against at Grady. (Affidavit of Joyce Harris, ¶¶ 25–34). Plaintiff refused to answer based on her own personal belief and values system. After the Magistrate Judge ordered her to testify, the deposition was adjourned in order to allow her to retain independent counsel.

In a letter dated November 4, 1998, Defendant Renford told Plaintiff that her "recent actions in the Swainson litigation cause[d him] to question [her] judgment and objectivity." He observed that "revealing for the first time at a deposition in an important case that [she] may [have felt] that [she] was discriminated against or treated unfairly demonstrates a serious lack of judgment." He also questioned the wisdom of her refusal not to discuss her allegations with Grady's attorneys or with the counsel hired to investigate the matter independently. He also stated to her: "You do not appear to be satisfied in your current position and based on your current conduct of refusing to cooperate with The Authority and its attorneys I seriously question your judgment and ability to successfully perform your duties." He concluded by giving her the option of (1)

meeting with Grady's attorneys and answering their questions about the Swainson litigation, being suspended for three days if she refused, and then terminated if she refused again; or (2) resigning immediately. (Dep. of Joyce Harris, Exhibit 8).

Plaintiff responded in a letter dated November 10, 1998. She accused Defendant Renford of having mistreated her over the years. She complained that he had discriminated against her by not approving the tuition reimbursement for her that he had approved for his secretary. She complained that he had intentionally inflicted emotional distress upon her by denying her vacation requests, publicly ridiculing her and being openly hostile toward her. She also alleged that his decision to cut the human resources management staff by 50% was based on a personal vendetta against her. She also indicated that she had not submitted formal complaints against him (except on one previous occasion) because she did not want to harm Grady or her own career. She also implied that she would have answered questions about her allegations if Defendant Renford personally had asked her about it earlier. (Dep. of Joyce Harris, Exhibit 27).

Defendants assert that Plaintiff was then suspended without pay from November 12 through November 16, 1998, but Plaintiff asserts that she was out on paid sick leave those days (Affidavit of Joyce Harris, ¶ 38). It is agreed, however, that Plaintiff was terminated on December 9, 1998. Defendant Renford presented Plaintiff with another letter, in which he notified her of his decision to terminate her because "it ha[d] become increasingly clear to [him] that [their] working relationship ha[d] deteriorated to a point that it [was] no longer effective or beneficial to

Fulton DeKalb Hospital Authority." (Dep. of Joyce Harris, Exhibit 12). He cited concerns about her performance as Senior Vice President of Human Resources, including actions and statements that indicated her lack of support for him. He asserted that she had not completed important assignments, that she had developed poor relationships with other members of the management team and that she had allowed her disapproval of him to affect her performance. He specifically referred to her refusal to cooperate with the attorneys in the Swainson litigation. (Dep. of Joyce Harris, Exhibit 12).

On March 10, 1999, Plaintiff filed her charge of discrimination with the EEOC, alleging race, sex, and disability discrimination as well as retaliation. (Dep. of Joyce Harris, Exhibit 6). On February 12, 2002, a Report and Recommendation (R & R) was issued by Magistrate Judge Alan J. Baverman granting summary judgment to all Defendants on all substantive counts of Plaintiff's complaint with two exceptions. The Magistrate Judge denied summary judgment for Defendants Grady with respect to Plaintiff's retaliation claim, and denied summary judgment for all the Defendants on Plaintiff's claim of intentional infliction of emotional distress. The Magistrate failed to address Defendants' motion with respect to Plaintiff's punitive damages claim. Defendants object to those portions of the Report and Recommendation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

After careful review of the Report and Recommendation, this Court agrees with the thorough and well reasoned Report and Recommendation Magistrate Judge recommending granting summary judgment on the Title VII claims against the individual Defendants; granting summary judgment with respect to the sexual harassment claim for failure to file an EEOC charge within 180 days of the harassing behavior; granting summary judgment as to her race and sex discrimination claims for failure to file an EEOC charge within 180 days of the discriminatory actions and failure to state a *prima facie* case as to her termination. The issue remaining is whether the Magistrate Judge was correct in denying summary judgment regarding Plaintiff's retaliation claim and Plaintiff's claim of intentional infliction of emotional distress. In addition, this Court will address the issue of punitive damages.

### A. RETALIATION CLAIM

In order to state a *prima facie* case of retaliation, Plaintiff must establish

statutorily protected activity, an adverse employment action, and a causal connection between the two. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997). The Magistrate Judge correctly limited Plaintiff's retaliation claim to her termination on December 9, 1998, and correctly found that her termination constituted an "adverse employment action" under Title VII. (Report and Recommendation, p. 22). The Magistrate Judge also concluded that the Plaintiff's testimony in her deposition for the *Swainson* litigation and her refusal to provide information to Defendants in their subsequent investigation were statutorily protected activities within the coverage of Title VII's anti-retaliation provisions. Further, the Magistrate Judge found that the Plaintiff could also establish a causal connection between the two events. Thus, the Magistrate Judge held that the Plaintiff had satisfied the three-pronged test establishing a *prima facie* case and denied summary judgment on the retaliation claim. (Report and Recommendation, p. 31). The undersigned respectfully disagrees with the Magistrate Judge's conclusion that the retaliation provision of Title VII protects an employee who refuses to participate in an investigation of a discrimination charge.

Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The Magistrate Judge found that the Plaintiff's refusal to answer questions in her deposition in the Swainson lawsuit, even after being ordered to do so by Magistrate Judge Harper, and her subsequent refusal to cooperate in an internal investigation, constituted statutorily "protected activity." (Report and Recommendation, p. 22 & n. 4). However, the undersigned holds that the Plaintiff's refusal to participate in a Title VII investigation is not statutorily protected activity.

The cases relied upon by the Magistrate Judge did not involve an employee's voluntary and insubordinate refusal to participate in a Title VII investigation of complaints of discrimination. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir.1997) involved an employee who did participate, through involuntarily, in a Title VII proceeding by reluctantly giving deposition testimony which, in spite of his own personal wishes, assisted the claimant. *Merritt*, 120 F.3d at 1185. The Eleventh Circuit in *Merritt* held that involuntary participation and unwilling assistance in a Title VII proceeding constituted conduct protected from retaliation. *Id.* at 1185, 1189. This Court believes that *Merritt* is inapplicable to the facts of the present case. Unlike in *Merritt*, the Plaintiff in this case actually refused to give deposition testimony at all regarding her own experiences with discrimination, and continued to refuse to do so at her employer's request, even though both Plaintiff and her employer knew that such testimony could benefit Ms. Swainson. (Dep. of Joyce Harris, pp. 60, 62, 153–54). Thus, *Merritt*'s determination that the participation clause protects all kinds of testimony, whether supportive of the claimant or not, does not resolve the issue presented by the facts in the instant case. The issue presented here is whether a complete refusal to participate in an investigation constitutes protected activity in keeping with Title VII. There is no hint in *Merritt* that the Eleventh Circuit would give an employee a cause of action for

retaliation where the employee makes a claim of discrimination, refuses to cooperate in an investigation of the claim and, thus, provokes the employer to fire her for insubordination. Indeed it would be a strange world where the law rewarded such insubordinate behavior. The retaliation clause of Title VII is not a license for insubordination.

Another case that the Magistrate relies upon is *Smith v. Columbus Metro. Hous. Auth.*, 443 F.Supp. 61 (S.D.Ohio 1977). This case is also distinguishable. In *Smith*, an employee was demoted after she refused to sign an affidavit requested by the state agency which would have exculpated her employer in a pending agency investigation under Title VII. *Smith*, 443 F.Supp. at 62. Under these facts the *Smith* court held that "whether an employee decides to assist the charging party, or refuses to assist the employer, the employer may not retaliate against the employee, because this decision of the employee constitutes participation in an investigation or proceeding under Title VII." *Id.* at 64. The Smith court clarified, however, that it was not holding that an employee could never be disciplined for refusing to assist. *Id.* at 65. Rather, it limited its holding to a finding that the plaintiff's demotion was unlawful under the facts of the case before it because it constituted retaliation for her "decision not to participate in a pending investigation and proceeding in the manner that defendant desired." *Id.*

Unlike the employer in *Smith*, and as the Magistrate Judge noted, Grady attempted to have Plaintiff participate in an investigation with full knowledge that her testimony might harm, rather than exculpate it in the *Swainson* case. (Report and Recommendation, p. 27). Unlike the employer in *Smith*, there is no evidence that

Grady ever instructed Plaintiff to provide exculpatory testimony; rather, Grady, and Magistrate Judge Harper, desired only that she participate. (Affidavit of Randy Gepp, ¶¶ 8–10; Dep. of Joyce Harris, pp. 153–154, 163 & Exhibit 9). In doing so Grady merely sought to fulfill its obligations under Title VII to respond promptly with corrective action to eliminate such problems from the workplace and avoid litigation. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 806, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). An employer does not buy a lawsuit when it attempts to comply with Title VII by investigating a claim of discrimination and dismissing an insubordinate employee who refuses to cooperate in the investigation. Allowing such a lawsuit would frustrate the purpose and intent of Title VII's remedial nature and the requirements of *Faragher* and *Ellerth* that prompt investigation of Title VII complaints is required.

In contrast to the cases relied upon by the Magistrate Judge, there are cases which have directly addressed the issue of whether non-participation in an investigation or proceeding is statutorily protected activity. In *Williams v. West*, 172 F.3d 54 (Table) (unpublished), 172 F.3d 54, 1998 WL 904722, *3 (7th Cir.1998), the plaintiff complained to her department chief that she was being sexually harassed by a coworker, and that when she reported the harassment to her supervisor, no corrective action was taken. *Williams*, 172 F.3d 54, 1998 WL 904722 at *1. Later the department chief and the employer's EEO counselor both insisted that the plaintiff file formal EEO complaints against the alleged harasser and her supervisor. *Id.* Plaintiff refused to do so, and as a result,

she was demoted and denied career opportunities. *Id.* Approximately five months after she was demoted and denied career opportunities, she filed a complaint with the EEOC which included allegations of retaliation. *Id.* The district court granted summary judgment in favor of the employer, and the Seventh Circuit affirmed. The Seventh Circuit declined to follow *Smith v. Columbus Metro. Hous. Auth.*, 443 F.Supp. 61 (S.D.Ohio 1977), relied upon by the Magistrate Judge in this case, finding that, unlike in *Smith*, there was no indication that the employer in *Williams* was attempting to frustrate the purpose of Title VII. *Williams*, 172 F.3d 54, 1998 WL 904722 at *4.

The Sixth Circuit reached similar conclusions in two cases decided after the *Smith* decision. In one case, the plaintiff was discharged for refusing to cooperate with a state agency conducting an age discrimination investigation and for giving conflicting statements to the company regarding his activities as associated with the investigation. *Merkel v. Scovill, Inc.*, 787 F.2d 174, 179 (6th Cir.1986). The Sixth Circuit reversed a finding by the district court that the plaintiff's non-participation in the investigation was "protected activity," holding that "discrimination against an employee for lack of participation or nonparticipation in an investigation would not be a violation of the ADEA." [3] The *Merkel* Court recognized two exceptions to this holding, finding that a non-participating plaintiff would be protected under the anti-retaliation provisions only when the employer, in the course of an investigation, pressures an employee to provide a statement that the employer

knows or should know to be false, or pressures an employee to provide information or evidence which the employer does not reasonably believe the employee possesses. *Id.* Finding that none of the exceptions applied to the facts before it, the *Merkel* court reversed the finding of the district court, further noting that:

> [i]t is the interest of all concerned and consistent with the purpose of the ADEA to investigate and to resolve a discrimination charge as expeditiously and as fairly as reasonably possible. Thus it appears to us that the ADEA should not be construed to hold an employer liable for retaliation against an employee under the circumstances presented here.

*Id.* at 179.

The Sixth Circuit reached a similar conclusion in the case most similar to the instant one, *Thomas v. Norbar, Inc.*, 822 F.2d 1089 (Table) (unpublished), 1987 WL 38040, 822 F.2d 1089 (6th Cir.1987). In *Thomas*, the plaintiff was asked by his supervisor to speak with a commissioner from the Ohio Civil Rights Commission, who was visiting the company's plant in connection with an investigation of several charges pending against the company. *Thomas*, 822 F.2d 1089, 1987 WL 38040 at *1–2. Despite his supervisor's insistence, the plaintiff was reluctant to speak with the investigator. *Id.* at *2. The Sixth Circuit reversed the finding of the Southern District of Ohio and held that the plaintiff's refusal to speak to the commissioner and participate in the investigation was not "protected activity" under Title VII, and that the supervisor's insistence that the plaintiff speak to the investigator was not

---

**3.** Cases arising under the ADEA are governed by the same principles of law as cases arising under similar provisions of Title VII. *Hairston*

*v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993).

improper. *Id.* at \*5. Specifically, the *Thomas* court held that, because there was no evidence that the plaintiff's supervisors had pressured him to lie to the commissioner or that he had been pressured to give information regarding matters about which he had no knowledge, his refusal to participate in the investigation was not protected activity. *Id.*

Like the plaintiff in *Thomas*, Plaintiff in this case was reluctant to, and indeed refused to, testify about her alleged experiences with discrimination with Grady. This is true even after being directly questioned about it during the *Swainson* deposition, and after being ordered to do so by Magistrate Judge Harper. (Dep. of Joyce Harris, Exhibit 9). She also refused to cooperate with investigators in a separate internal investigation of her possible claims. (Dep. of Joyce Harris, pp. 153–154). There is no evidence in the record that Renford or anyone else at Grady pressured Plaintiff to lie in her deposition, or to the investigators, or that anyone insisted that Plaintiff provide information about which she had no knowledge. To the contrary, it was Plaintiff who determined on her own that she would not cooperate based solely on her "personal belief system and values." (Dep. of Joyce Harris, pp. 60, 62, 153–54). Thus, under *Thomas*, *Merkel* and *Williams*, Plaintiff's refusal to participate in the subsequent internal investigation are not protected activities under Title VII.

There are no cases from the Eleventh Circuit that have specifically dealt with the issue presented in the instant case. Although this Court is not bound by any cases outside the Eleventh Circuit, this Court looks to *Thomas*, *Merkel* and *Williams* for guidance in this matter because of both their factual similarity to the

present case and their furtherance of the purpose and intent of Title VII. Thus, the Defendants are entitled to Summary Judgment as to the claim of retaliation.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

■ Plaintiff has alleged a state law cause of action for intentional infliction of emotional distress. To establish a claim of intentional infliction of emotional distress, Plaintiff must establish each of the following elements: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused emotional distress (4) which is severe. *Trimble v. Circuit City Stores, Inc.*, 220 Ga.App. 498, 499, 469 S.E.2d 776 (1996). Georgia courts have recognized that the "burden which the plaintiff must meet in order to prevail in [alleging intentional infliction of emotional distress] is a stringent one." *Bridges v. Winn–Dixie Atlanta, Inc.*, 176 Ga.App. 227, 229, 335 S.E.2d 445 (1985). Further, under Georgia law, termination of an at-will employee will not support a cause of action for intentional infliction of emotional distress. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir.1993).

In her Complaint, Plaintiff alleged that Defendant Renford intentionally inflicted emotional distress upon her, and that all Defendants are liable for his actions because they failed to stop him. (Complaint ¶¶ 55–57; Dep. of Joyce Harris, p. 144). Although Plaintiff never specified the exact nature of her intentional infliction of emotional distress claim (Plaintiff's Brief in Opp. to Defendant's Motion for Summ. J., p. 20), the Magistrate Judge concluded that her allegations were based only upon the alleged retaliation she suffered by being discharged for refusing to testify in the *Swainson* litigation and for refusing to

cooperate in the subsequent internal investigation. (Report and Recommendation, p. 41).

■ The Magistrate Judge concluded that because he believed a genuine issue of material fact existed with respect to Plaintiff's retaliation claim, and based on the holding of *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835 (1991), Plaintiff's claim of intentional infliction of emotional distress could survive Defendants' motion for summary judgment. (Report and Recommendation, pp. 42–43). As discussed above, however, Plaintiff's retaliation claim should fail under Title VII, as she cannot establish that she engaged in any "protected activity" under Title VII. Thus, the Plaintiff has failed to create a genuine issue of fact as to the "intentional and reckless conduct" element of the claim and cannot sustain a cause of action for intentional infliction of emotional distress under these facts. The Defendants are entitled to Summary Judgment as to this claim. Furthermore, all of Plaintiff's state law claims are barred by the two year statute of limitations.

*C. PUNITIVE DAMAGES CLAIM*

■ Count Nine of Plaintiff's Complaint contains a separate and distinct cause of action for punitive damages. (Complaint, ¶¶ 72–74). Defendants moved for summary judgment on this Count, seeking to have all claims for punitive damages against Grady and the individual defendants in their official capacities dismissed as a matter of law. The Magistrate Judge failed to address this argument in his February 12, 2002 Report and Recommendation.

In Georgia, punitive damages "may be awarded only in tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed evidence of willful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise presumption of a conscious indifference to the consequences." O.C.G.A § 51–12–5.1. Georgia's punitive damages statute further provides that the purposes of punitive damages is not to compensate a plaintiff but is solely to punish a tortfeasor for outrageous conduct, and to deter others from engaging in similar conduct. *See Id.* In strict interpretation of this punitive damages statute, Georgia's Court of Appeals has held that any evidence presented must be "clear and convincing" and "it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." *Kodadek v. Lieberman,* 247 Ga.App. 606, 610, 545 S.E.2d 25 (2001).

In light of the foregoing, Plaintiff is not entitled to recover punitive damages under the facts of this case. According to Georgia law, without a tort claim, punitive damages are simply not recoverable. No independent cause of action sounding in tort as required by O.C.G.A § 51–12–5.1 remains in this case. Thus, Defendants' Motion for Summary Judgment for punitive damages is granted.

*IV. CONCLUSION*

For the reasons set forth above, the Court adopts those portions of the Report and Recommendation recommending granting the Defendants' Motion for Summary Judgment and declines to adopt those portions of the Report and Recommendation recommending denying the Defendants' Motion for Summary Judgment.

For the reasons set forth above, the Defendants' Motion Summary Judgment [Doc. 19] is GRANTED.

## UNITED STATES MAGISTRATE JUDGE'S NON–FINAL REPORT AND RECOMMENDATION

BAVERMAN, United States Magistrate Judge.

This matter is before the Court on Defendants' motion for summary judgment [Doc. 19]. In this employment discrimination case, Plaintiff asserts causes of action for sexual harassment, gender and race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* and a denial of due process presumably pursuant to 42 U.S.C. § 1983; as well as state law claims for negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress and invasion of privacy. These allegations arise out of Plaintiff's former employment with Defendant Fulton–De-Kalb Hospital Authority. For the reasons explained herein, the undersigned Magistrate Judge hereby **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART and DENIED IN PART.**

## I. Summary judgment standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P.56(c). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party then "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P.56(e). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice–Lamar,* 232 F.3d at 840 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice–Lamar,* 232 F.3d at 840 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## II. Title VII framework

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

When analyzing a disparate treatment claim based upon circumstantial evidence, courts utilize the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp.*

*v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) similarly situated employees outside her protected class were treated more favorably by his employer; and (4) she was qualified for the job. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).

If the plaintiff establishes this *prima facie* case, an inference of discrimination is raised, and a burden of production then shifts to the defendant to rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for its action. This burden is "exceedingly light." *Id.* at 1564. If the defendant meets this light burden, then the inference of discrimination is erased, and the burden then shifts back again to the plaintiff "to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Id.* at 1565. Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Title VII also makes it an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). These two prohibitions on retaliation are generally known as. the opposition clause and the participation clause, respectively. *EEOC v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000). A plaintiff asserting a claim of retaliation in violation of Title VII must establish a *prima facie* case by showing "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield,* ·115 F.3d at 1566. She is not required to prove the underlying claim of discrimination that led to his protected activity, but he "must have had a reasonable good faith belief that the discrimination existed." *Id.* If the plaintiff establishes the *prima facie* case, the burden-shifting analysis articulated in *McDonnell Douglas, Burdine,* and *Hicks* for disparate treatment claims based on circumstantial evidence· continues. *See Pennington v. City of Huntsville,* 261 F.3d 1262 (11th Cir.2001) (applying burden-shifting paradigm of *prima facie* case, articulation of legitimate reasons, and showing of pretext to retaliation claim).

Workplace harassment based on a prohibited factor, such as an employee's sex or race, also violates Title VII. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (discussing Title VII's prohibition on severe or pervasive harassment based on prohibited factors, including sex, race, and national origin). A plaintiff asserting a harassment claim must show that (1) she is a member of a protected class; (2) she has been subject to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment was sufficiently severe or per-

vasive such that it altered the terms and conditions of her employment and created a discriminatorily abusive working environment; and (5) there is a basis for holding her employer liable. *See Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 508 (11th Cir.2000) (outlining elements of sexual harassment claim).

### III. Facts of the case

Virtually every fact in the record in this case is disputed by the parties. They agree that Plaintiff Joyce Gulledge Harris was first employed at Grady Memorial Hospital by Defendant Fulton–DeKalb Hospital Authority in 1994 as Vice President of Human Resources and that she became Senior Vice President of Human Resources a few months later. (D ¶ 1).[1] They also agree that Defendant Edward Renford, the President/Chief Executive Officer of Grady Health System, terminated her on December 9, 1998. (D ¶ 39). They do not agree, however, about much that occurred in between.

The parties' factual statements paint very different pictures of Plaintiff's tenure at Grady. For instance, Plaintiff and a number of witnesses on her behalf assert that she "related well with and supported her employees and was an even-tempered and objective manager" and that "[a]ll-

though she disagreed with Defendant Renford from time to time on various issues, she did so respectfully and executed directives given." (P,p.2). Defendants and their witnesses, on the other hand, contend that Plaintiff had "a difficult time dealing with authority" and that she did not get along well with Defendant Renford and made comments to him such as, "If you know so much, handle it yourself." (D ¶¶ 2, 4). She allegedly frequently showed a lack of respect for him by stating that she would not follow his directives and raising sensitive topics in public meetings and by talking about him to other employees in sarcastic tones. (D ¶¶ 6–7, 20). Defendants assert that Plaintiff also had trouble relating with in-house and outside attorneys while performing her human resources/personnel duties. (D ¶¶ 9–15).

Plaintiff, meanwhile, asserts that it was Defendant Renford who treated her disrespectfully. She claims that he made suggestive and inappropriate sexual comments to her, such as saying that she had "gorgeous brown eyes" and "soft gentle hands" while "roaming his eyes over her body and giving Plaintiff the sense that he was 'undressing' her with his eyes." (P, p. 2–3). She also says that he made inappropriate comments about himself, such as calling himself "Big Ed," which she took to be a reference to the size of his penis,[2] and telling Plaintiff that, if he ever got di-

---

**1.** Paragraph numbers preceded by "D" refer to paragraphs in Defendants' Statement of Uncontested Material Facts. Page numbers preceded by "P" refer to pages in Plaintiff's Statement of Undisputed Material Facts, which does not contain numbered paragraphs.

As Defendants note, Plaintiff's statement of facts as to which she contends there are genuine issues to be tried does not conform to Local Rule 56.1(B)(2), N.D. Ga., which requires the respondent to a summary judgment motion to "attach to the response a separate

and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried." Plaintiff's statement of facts is a rambling recitation in narrative form. The undersigned Magistrate Judge, however, will consider it in ascertaining the relevant facts in the record.

**2.** This alleged incident is reported differently in various places by both parties. In her deposition, Plaintiff testified that she called him "the big man on campus" and he re-

vorced, she would be at his "beck and call." She also asserts that Defendant Renford often "hugged her, stroked her and otherwise touched her suggestively and inappropriately." He also allegedly inquired about her private life, asking about the "type of men" she was dating, how she "treated" these men, and how she believed she could better "please" the men in her life. (P, p. 3).

In her deposition, Plaintiff testified that Defendant Renford made the suggestive and inappropriate comments about her physical characteristics during the first two or three years of her employment, from 1994 through 1997. (Harris depo., p. 170–71). She also testified that the "Big Ed" comment was made around 1996 or 1997 and that the "beck and call" statement was made before that. (Harris depo., p. 173). She testified that the questions about her private life began shortly after she started working there and that she could not remember when they stopped. (Harris depo., p. 176). In a document she submitted to the Equal Employment Opportunity Commission ("EEOC") titled "Response to EEOC charge" and dated May 21, 1999, Plaintiff asserted that he stopped asking her for hugs "during approximately the last 18 months of [her] employment." (Harris depo., exh. 1, p. 11).

She asserts that, because she did not react positively to these comments, Defendant Renford denied her a pay increase in 1995; frequently denied her requests to use vacation time, with the latest such denial coming in the summer of 1998; denied a tuition reimbursement in 1997; and conducted a year-long "investigational vendetta" against her department in 1996–97. She also alleges that he was frequently rude, hostile and abusive to her and that he intentionally sought to embarrass her in front of other executives. She finally alleges that he retaliated against her in an unspecified way for publicly "speaking out against policies and procedures contrary to applicable Federal or State Law, Rules and Regulations, including *inter alia,* the letting of a contract to a State Senator in 1995 or 1996 without following proper procedures." (Harris aff., ¶ 4).

Although the parties interpret the incident quite differently, they do seem to agree that a problem developed over Plaintiff's participation or lack thereof in an employment discrimination lawsuit filed against Grady by Christine Swainson. It is undisputed that Plaintiff was a material witness and defendant in the Swainson litigation and that she had been involved in the exchange of memoranda with Ms. Swainson, which led to Ms. Swainson's termination, of which she approved. (D ¶ 25). It is also undisputed that Plaintiff was deposed by Ms. Swainson's counsel. According to Randy Gepp, an attorney with the firm of Arrington & Hollowell, P.C., who represented the defendants in that matter, Plaintiff Harris (who was a defendant there) testified that she herself may have been a victim of discrimination but then refused to answer any further questions from Ms. Swainson's lawyer about it, causing the deposition to be adjourned. According to him, she also later refused to answer any questions about her allegation either from Defendants' attorneys or from another team of independent attorneys who were hired to investigate. He avers that Defendants also hired an attorney to represent Plaintiff in the Swainson matter but she still refused to cooperate. (Gepp aff., ¶¶ 5–10).

sponded, "How do you know?" (Harris depo., p. 171).

Plaintiff denies that she testified that she may have been a discrimination victim but asserts that she said, "I had thought about some things" when asked if she had ever been the victim of discrimination. She acknowledges, though, that she repeatedly refused to answer the same question about her being discriminated against at Grady. (Harris aff., ¶¶ 25–34). Plaintiff apparently refused to answer based on her own personal belief and values system. (D ¶ 28).

In a letter dated November 4, 1998, Defendant Renford told Plaintiff that her "recent actions in the Swainson litigation cause[d him] to question [her] judgment and objectivity." He observed that "revealing for the first time at a deposition in an important case that [she] may [have felt] that [she] was discriminated against or treated unfairly demonstrates a serious lack of judgment." He also questioned the wisdom of her refusal not to discuss her allegations with Grady's attorneys or with the counsel hired to investigate the matter independently. He also stated to her: "You do not appear to be satisfied in your current position and based on your current conduct of refusing to cooperate with The Authority and its attorneys I seriously question your judgment and ability to successfully perform your duties." He concluded by giving her the option of (1) meeting with Grady's attorneys and answering their questions about the Swainson litigation, being suspended for three days if she refused, and then terminated if she refused again; or (2) resigning immediately. (Harris depo, exh. 8).

Plaintiff responded in a letter dated November 10, 1998. She accused Defendant Renford of having mistreated her over the years. She complained that he had discriminated against her by not approving the tuition reimbursement for her that he had approved for his secretary. She complained that he had intentionally inflicted emotional distress upon her by denying her vacation requests, publicly ridiculing her and being openly hostile toward her. She also alleged that his decision to cut the human resources management staff by 50% was based on a personal vendetta against her. She also indicated that she had not submitted formal complaints against him (except on one previous occasion) because she did not want to harm Grady or her own career. She also implied that she would have answered questions about her allegations if Defendant Renford personally had asked her about it earlier. (Harris depo., exh. 27).

Defendants assert that Plaintiff was then suspended without pay from November 12 through November 16, 1998, (D ¶ 38), but Plaintiff asserts that she was out on paid sick leave those days, (Harris aff., ¶ 38). It is agreed, however, that Plaintiff was terminated on December 9, 1998. Defendant Renford presented Plaintiff with another letter, in which he notified her of his decision to terminate her because "it ha[d] become increasingly clear to [him] that [their] working relationship ha[d] deteriorated to a point that it [was] no longer effective or beneficial to Fulton DeKalb Hospital Authority." (Harris depo., exh. 12). He cited concerns about her performance as Senior Vice President of Human Resources, including actions and statements that indicated her lack of support for him. He asserted that she had not completed important assignments, that she had developed poor relationships with other members of the management team and that she had allowed her disapproval of him to affect her performance. He specifically referred to her refusal to cooperate with the attorneys in the Swainson litigation. (Harris depo., exh. 12).

On March 10, 1999, Plaintiff filed her charge of discrimination with the EEOC, alleging race, sex, and disability discrimination as well as retaliation. (Harris depo., exh. 6).

## IV. Plaintiff's Title VII claims

In her complaint, filed on December 14, 2000, Plaintiff asserts claims under Title VII for sexual harassment, gender and race discrimination (disparate treatment), and retaliation.

### A. Claims against individual defendants in their individual capacities

■ In addition to her corporate employers, Plaintiff has also sued Edward J. Renford, Robert L. Brown, Jr., Sarah R. Sloan, and Marla O. Coleman in both their individual and official capacities. As Defendants correctly argue, there is no individual liability under Title VII. *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir.2000); *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir.1995). The individual Defendants are not proper defendants in their individual capacities. The undersigned Magistrate Judge, therefore, **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's Title VII claims against Defendants Renford, Brown, Sloan, and Coleman in their individual capacities.

### B. Sexual harassment claim

In "Count One: Sexual Harassment" of her complaint, Plaintiff alleges that Defendant Renford created a sexually hostile work environment and made her believe that her job, pay and benefits were dependent upon her positively responding and submitting to his inappropriate and suggestive comments and actions. As explained above, these comments allegedly included his saying that she had "gorgeous brown eyes" and "soft gentle hands" while "roaming his eyes over her body and giving Plaintiff the sense that he was 'undressing' her with his eyes" from 1994 through 1997; calling himself "Big Ed," which she took to be a reference to the size of his penis, around 1996 or 1997; and telling her that, if he ever got divorced, she would be at his "beck and call" sometime before that. He also allegedly inquired about her private life, asking about the "type of men" she was dating, how she "treated" these men, and how she believed she could better "please" the men in her life. She testified that these questions began shortly after she started working there and that she could not remember when they stopped. His allegedly inappropriate actions involved "hugg[ing] her, strok[ing] her and otherwise touched her suggestively and inappropriately" until approximately 18 months prior to her termination. She also alleges that he was frequently rude, hostile and abusive to her and that he intentionally sought to embarrass her in front of other executives. She asserts that, because she did not react positively to this behavior, Defendant Renford denied her a pay increase in 1995; frequently denied her requests to use vacation time, with the latest such denial coming in the summer of 1998; denied a tuition reimbursement in 1997; and conducted a year-long "investigational vendetta" against her department in 1996–97, and ultimately terminated her in 1998.

■ Defendant first argues that Plaintiff's sexual harassment claim is time-barred by her failure to file an EEOC charge of discrimination within 180 days of the harassing behavior. "Title VII re-

quires that any employee invoking the statute's protection file a charge with the EEOC within 180 days of the date he or she was discriminated against." *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1545, *amended by,* 848 F.2d 1522 (11th Cir.1988). "The 180 days begins running from the date the employee knows or reasonably should know that he or she has been discriminated against." *Id.* Here, Plaintiff filed her EEOC charge in March 1999, precluding from consideration any discriminatory acts that took place prior to October 1998.

 Plaintiff generally acknowledges that the harassing acts took place outside of the 180–day time period but argues that her claim is nevertheless timely because these acts were part of a continuing violation that culminated with her termination in December 1998, less than 180 days before the filing of her charge. The continuing violations doctrine provides an exception to the 180–day rule, allowing a plaintiff to pursue a claim on an alleged act of discrimination that took place more than 180 days before she filed her EEOC charge where that discriminatory act was part of a continuing violation of Title VII that continued into the period of time beginning 180 days before the EEOC filing. *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208 (11th Cir.2001); *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir.1992); *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). This exception to the general rule is "premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent

to a reasonably prudent person similarly situated." *Hipp,* 252 F.3d at 1222. The purpose of the exception "is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Id.* (quoting *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994)).

This Court has previously held:

Thus, under the continuing violations doctrine, a claim which otherwise would be precluded because it is based on conduct which falls outside of the 180–day filing period may nonetheless be considered timely when there is a "substantial nexus" between that conduct and conduct occurring within the filing period. In order to demonstrate a continuing violation, a plaintiff must show (1) the occurrence of a specific act of discrimination within the filing period and (2) a link between this act and the alleged misconduct outside of the filing period which forms the basis of plaintiff's claim.

*Chawla v. Emory Univ.,* 1997 WL 907570, *8 (N.D.Ga. Feb. 12, 1997).

Here, the only act of sexual harassment that Plaintiff alleges to have taken place within the 180–day period is her December 1998 termination. The other acts allegedly took place at various times well before that, during the period from 1994 through, at the latest, the summer of 1998.[3] Under the test explained in *Chawla,* she has not shown that these allegations constitute a continuing violation as she has not shown that there is a substantial nexus between her termination and the alleged harassing behavior, which took place anywhere from six months to four years earlier. The

---

**3.** Plaintiff has testified that she does not remember when the questions about her personal life stopped, but she cannot avoid the

EEOC timeliness requirements merely by saying that she does not remember when an act occurred.

previous acts and the decision to terminate her are not similar in nature. There also is not a close temporal proximity between them. There is no other evidence in the record, other than Plaintiff's conclusory allegation, showing that her termination was based on Defendant Renford's allegedly harassing behavior or lack of a positive response to it. Furthermore, applying the continuing violations doctrine here would not serve its purpose of "permit[ting] the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Hipp*, 252 F.3d at 1222. The discriminatory nature of Defendant Renford's alleged acts of harassment would have been clear when they occurred.

Accordingly, the undersigned Magistrate Judge finds that Plaintiff's Title VII sexual harassment claim is time-barred and **RECOMMENDS** that Defendants' summary judgment motion as to that claim be **GRANTED**.

## C. Disparate treatment claims

■ The nature of Plaintiff's disparate treatment race and sex discrimination claims, found in "Count Two: Gender and Race Discrimination" of her complaint, is somewhat unclear. In her summary judgment response brief, she seems to argue that she was discriminated against based on her sex and gender when she was denied accrued vacation time; when an earned pay increase was delayed; when she was denied access to a tuition reimbursement plan; and when she was terminated. (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 11, 13).

Three of these four alleged adverse actions are clearly time-barred. As explained above, the record indicates that Plaintiff was denied vacation time for the last time in the summer of 1998; was denied a pay increase in 1995; and denied a tuition reimbursement in 1997. It is undisputed that each of these discrete adverse employment actions took place more than 180 days before Plaintiff finally filed her EEOC charge in March 1999. As a result, Plaintiff's claims based on them are time-barred. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's Title VII race and sex discrimination claims regarding these three adverse actions.

■ The only adverse action as to which Plaintiff filed a timely EEOC charge, then, is her December 1998 termination. As explained above, in order to establish a *prima facie* case of race or sex discrimination, Plaintiff must show that she is a member of a protected class; that she suffered an adverse employment action; that similarly situated employees from outside her protected class were treated more favorably; and that she was qualified for her job. For these purposes, it is undisputed that Plaintiff is a member of protected classes as she is an African–American female; that she suffered an adverse employment action when she was terminated; and that she was generally qualified for the position she had held for more than four years. The parties dispute, however, whether similarly situated employees from outside her protected classes were treated more favorably in this regard.

■ The undersigned Magistrate Judge finds that Plaintiff cannot establish a *prima facie* case of sex or race discrimination as she has not identified a similarly

situated male or non-African-American who was treated more favorably than she was regarding her termination. In attempting to satisfy this third prong of the *prima facie* case, Plaintiff argues that Defendant Renford treated her more roughly than he treated white females; that he never humiliated men as he humiliated her at meetings; and that he was not open to the ideas of women, especially black women. This line of argument, however, even if true, misses the point. It is Plaintiff's ultimate burden to prove in a Title VII disparate treatment case that, specifically in regard to the adverse employment action on which her claim is based, she was treated less favorably than similarly situated employees outside her protected classes. It is not enough to show that in general the decision-maker treated other people better.

The Eleventh Circuit Court of Appeals has held that:

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.... We require that the quantity and quality of the comparator' misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges.

*Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999) (citations omitted). Plain-

tiff, therefore, would need to show that a male or non-African-American employee (or both) engaged in the same or similar conduct and was disciplined less severely. For instance, she would need to show that a specific male or non-African-American also refused to answer questions regarding a lawsuit filed against Defendants and a subsequent investigation, but was not terminated. Plaintiff has not come close to doing this. In her brief, she has only made general claims that Defendant Renford was less harsh and more open to other unnamed employees.

Accordingly, the undersigned Magistrate Judge finds that Plaintiff is unable to make out a *prima facie* case of race or sex discrimination and, therefore, **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's Title VII disparate treatment claims.

### D. Retaliation claim

Plaintiff further alleges that she was terminated in retaliation for her refusal to answer questions about possible discrimination in her deposition for the Swainson litigation and in subsequent questioning and investigations.[4] As explained above, in order to establish a *prima facie* case of retaliation, Plaintiff must show that she engaged in statutorily protected conduct; that she suffered an adverse employment action; and that there is a causal connection between the two events. It is again undisputed that Plaintiff suffered an adverse employment action when she was

---

4. Although Plaintiff has mentioned various other instances of purported statutorily protected activity during the litigation, her refusal to answer questions in her Swainson deposition and thereafter is the only statutorily protected activity on which she relies in response to Defendants' summary judgment motion. (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 14). Even if Plaintiff were continuing to assert these bases for her retaliation claim, they would be without merit. Actions such as opposing the awarding of a contract to a state senator in violation of bidding procedures are not protected by Title VII, which focuses solely on employment discrimination.

terminated, but the parties dispute whether she can satisfy the other two prongs.

This claim raises the rather unusual issue of whether an employee's refusal to answer questions, asked in a deposition regarding another employee's lawsuit and a resulting investigation, about whether her employer had previously discriminated against her constitutes protected activity under Title VII. The statute prohibits discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). This prohibition includes both an "opposition clause" and a "participation clause." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d at 1174. Although Plaintiff does not reference this distinction, it appears that she relies on the participation clause rather than the opposition clause. It, therefore, must be determined whether she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII prior to her termination. In this instance, it may be best to divide this determination into two separate inquiries: first, whether there was a covered investigation, proceeding or hearing under Title VII and, second, whether Plaintiff made a charge, testified, assisted or participated therein.

The first inquiry is perhaps the easier of the two. The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC" but "does not include participating in an employer's internal, in-house investigation, conducted a part from a formal charge

with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d at 1174. *See also id.* at 1174 n. 3 (contrasting holding in *EEOC v. Total Sys. Servs., Inc.* where internal investigation occurred prior to any EEOC filing with holding in *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir.1999), where internal investigation was prompted by filing of EEOC charge). "So, at a minimum, some employee must file a charge with the EEOC ... or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." *Id.* at 1352 n. 2.

It is clear that the deposition Plaintiff gave during the discovery period in Ms. Swainson's employment discrimination lawsuit was a proceeding under Title VII. Furthermore, in that deposition, Plaintiff gave testimony that seemed to imply that she had been discriminated against while in Defendants' employ. This partial revelation prompted Defendants to initiate an investigation into the possibility that she had been the victim of discrimination, evidence which then-Magistrate Judge Harper apparently ruled to be discoverable evidence in Ms. Swainson's Title VII case against Defendants. (*See* Harris depo., exh. 9). This subsequent internal investigation, therefore, was a proceeding or activity which occurred in conjunction with and after Ms. Swainson's filing of a formal charge with the EEOC and a lawsuit in federal court and was not merely an employer's in-house investigation conducted apart from a formal charge with the EEOC. *See EEOC v. Total Sys. Servs., Inc., supra.* Even though Plaintiff herself had not filed a charge, the investigation was directly linked to the charge and lawsuit Ms. Swainson had filed.

In regard to the second inquiry—whether Plaintiff made a charge, testified, assist-

ed, or participated in any manner in this proceeding or investigation—it is clear that Plaintiff testified in the deposition for the Swainson litigation and that this testimony constitutes protected activity under Title VII. She also "participated" in the subsequent investigation, though not to the satisfaction of either her employer or her co-worker/plaintiff. In regard to the phrase "participated in any manner," the Eleventh Circuit Court of Appeals has explained:

> As to 'participated in any manner,' the adjective 'any' is not ambiguous; it has a well-established meaning. Earlier this year, the Supreme Court explained, "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1, 4–5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (citation omitted). Here, as in *Gonzales,* 'Congress did not add any language limiting the breadth of that word,' so 'any' means all. *See id.*

*Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186 (11th Cir.1997). The *Merritt* Court observed that "whatever design might be perceived behind the provision, the actual design put forward through the language of the provision does not require that the testimony or other participation aid or assist the claimant." *Id.* "Under the plain language of the provision, those who testify or otherwise participate in a Title VII proceeding are protected from retaliation for having done so, even if it turns out that they were not of any assistance to the Title VII claimant." *Id.*

The United States District Court for the Southern District of Ohio faced a somewhat similar situation in *Smith v. Columbus Metro. Hous. Auth.,* 443 F.Supp. 61 (S.D.Ohio 1977). There, the plaintiff was asked by her employer to execute an affidavit regarding a discrimination claim that had been filed by a co-worker, and she refused. After she was demoted, she sued her employer for unlawful retaliation under Title VII. The *Smith* Court faced the question of "whether demoting plaintiff because she refused to make the sworn statement was demoting her because she 'assisted or participated in any manner' in the pending [Ohio Civil Rights Commission] investigation" and held that the defendant-employer's action violated "the broad statutory prohibition against retaliation for participating in any manner in a pending investigation." *Id.* at 63. The Court explained:

> Once a charge is filed, the charging party is no longer simply an employee, and the respondent is no longer simply an employer. Both are parties to a Title VII agency proceeding, and both have lawful avenues provided by statute, rule, or regulation by which to discover information pertinent to the pending proceeding.... When an employee is approached on an informal, ex parte basis by one of the parties to such a proceeding and is asked to relate personal knowledge concerning the subject matter of the charge, that employee must decide whether to cooperate on such a basis with the inquiring party. The question is not whether the employee's version of pertinent facts can ever be developed, because relevant, unprivileged testimony can be compelled before a Title VII agency.... Rather, the question is whether the employee will cooperate on an informal basis by orally relating his personal knowledge or by signing a sworn or unsworn statement.
>
> Because anything the employee relates is potentially impeachment material should he later change his version of events, the employee's decision whether

to cooperate is one which affects his participation in the pending proceeding. Whether an employee agrees or refuses to cooperate, his participation in the pending Title VII investigation has begun.

*Id.* at 64.

The scenario in *Smith* differs from the instant factual situation in that the plaintiff-employee in *Smith* refused her employer's request to execute an affidavit that would have provided testimony in support of the employer's defense, whereas here Plaintiff refused to give testimony that possibly would have bolstered her co-worker's claim and injured her employer's defense. As the Eleventh Circuit has noted, however, "[t]here is no mention of motive in the statutory provision." *Merritt,* 120 F.3d at 1187. Title VII's anti-retaliation participation clause protects those who seek to support the relevant claim of discrimination as well as those who do not. *Id.* at 1186–87.

In support of their argument, Defendants cite to this Court's previous holding in *Fletcher v. ADT Sec. Servs., Inc.,* 2000 WL 33231616 (N.D.Ga. Dec. 7, 2000), for the proposition that an employee's failure to communicate is not protected by Title VII. The Court's holding in *Fletcher,* however, did not involve a situation like this one. There, the Court merely held that an employee could not sustain a claim that he had been retaliated against for complaining about discrimination when he had in fact never actually complained about discrimination. *Id.* at *11–12.[5]

Plaintiff's claim in the instant case is rather different. During her deposition, Plaintiff suggested that she was the victim of some sort of discrimination, but refused to state exactly what the discrimination was or identify the alleged discriminator.[6] In the context of the co-worker's discrimination case, Plaintiff refused to completely answer an inquiry as to whether she had

---

5. In *Fletcher,* Judge King wrote:
 "... Plaintiff cannot establish that he engaged in any statutorily protected expression. To satisfy this element, the employee must show, at the very least, that he communicated to the employer his belief that the *discrimination* has occurred or is occurring. *See Webb v. R & B Holding Company, Inc.,* 992 F.Supp. 1382, 1389 (S.D.Fla. 1998). Plaintiff did not do this. The closest Plaintiff came to engaging in protected expression occurred in May 1996, when he complained to management about the company's decision not to promote him. Although Plaintiff 'had come to believe that both race and age were part of the decision to deny [his] promotion,' he acknowledges that he 'did not raise the exact words' race or age because he was allegedly concerned about retaliation.... 'It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.' *Webb,* 992 F.Supp. at 1389."
 *Fletcher,* at *11–12.

6. In the Swainson case, Plaintiff was asked by Swainson's lawyer whether she felt that she was the victim of race or sex discrimination. In response, she testified, "There may have been times that I've questioned some things." Exhibit 9 to Defendants' Brief in Support of Summary Judgment [Doc. 19]; deposition at 98. However, when asked to identify the alleged discriminator, Plaintiff responded, "I'd rather not say." The following colloquy between Plaintiff and Swainson's lawyer ensued:

 Q: Why would it concern you to say who you felt was discriminating against you?
 A: Because if I did feel I that I was being discriminated against for some illegal reason, then it's my responsibility to do something about it.
 Q: And did you?
 A: No.
 Q: All right. If somebody was discriminating against you in the Hospital Authority, it would have to be somebody above you in the chain of command, right?
 A: Yes.

experienced discrimination. As previously noted, Plaintiff had testified as to some issues in the co-worker's litigation, thus establishing, for purposes of the present motion, Plaintiff's "participation" in an EEO matter.

The undersigned Magistrate Judge concludes, therefore, that Plaintiff's testimony in her deposition for the Swainson litigation and her refusal to provide information to Defendants in their subsequent investigation were statutorily protected activities within the coverage of Title VII's anti-retaliation provisions. As Plaintiff consequently can satisfy both the first and second prongs of a *prima facie* case of retaliation, it must then be determined whether she can establish the third requirement—a causal connection between the two events.

The undersigned finds that she can. Defendant Renford's letters of November 4 and December 9, 1998, make it clear that Plaintiff's termination was directly related to her refusal to cooperate with the Swainson-related investigation. Although he certainly mentioned other areas of concern and previous actions that caused those concerns, it cannot be seriously questioned that her not answering questions about possible discrimination precipitated her firing. In his November 4 letter, Defendant Renford explicitly told Plaintiff that (unless she chose to resign) she must answer the questions or be suspended for three days; and that, if she still refused, she would be terminated. That is exactly what happened. She refused to talk; she was suspended; she still refused to talk; and she was terminated. A reasonable jury could certainly conclude that there is a causal connection between her protected activity and her adverse employment action. Plaintiff, therefore, can establish a *prima facie* case of retaliation.

A burden of production then shifts to Defendants to articulate a legitimate, non-

Q: And there are only two executive personnel and the board above you in the chain of command, right?
A: Right.
Q: And is there any reason why you would be reluctant, if you felt you were being discriminated against, to do something about it if the board or the executive level personnel were discriminating against you?
A: For my own personal reasons, yes.
Q: What personal reasons would prevent you from complaining about that?
A: I'd rather not say..
Q: I'm not asking you if you'd rather not say.
A: I won't say. I'm telling you, I won't say.

\* \* \* \* \* \*

Q: And had you ever complained to anyone about these things that you had questioned?
A: No.
Q: Why not?
A: Because I really didn't think there was any need to because they were just questions.
Q: Who do you think was discriminating against you?
A: I'd rather not answer that.

Q: Ms. Harris, please answer the question. Who do you feel was discriminating against you?
A: I didn't say I thought anybody was discriminating against me.
Q: Who did you have questions about as to whether they were discriminating against you?
A: I don't want to answer that.
Q: I understand you don't want to answer it, but I'm going to have to insist. Please answer the question.
A: I don't think my answer to that question would do anyone any good, so I don't want to answer that.
Q: That's not for you to decide.
A Yes, it is.

Deposition at 98–102. At this point Judge Harper was telephoned, and he instructed Plaintiff to answer the questions. However, because defense counsel in the Swainson case believed that Plaintiff's answers might present him with a conflict of interest, the deposition was recessed in order to allow Plaintiff to obtain independent counsel. There is no indication in the record that Plaintiff's deposition in the Swainson case ever was resumed.

discriminatory reason for Plaintiff's discharge. In their brief, Defendants assert that Plaintiff was terminated due to "insubordination and incompatibility with her CEO, supervisor and other members of the Executive Staff." (Brief of Defendants in Support of Motion for Summary Judgment, p. 18). This satisfies Defendants' exceedingly light burden.

The burden of persuasion then returns to Plaintiff to show at least a genuine issue of material fact as to whether Defendants' stated reason is pretextual. Although a jury could find that Plaintiff was indeed terminated based on previous acts of insubordination and/or incompatibility with supervisors and co-workers, a reasonable jury could also conclude based on the evidence in the record, particularly Defendant Renford's November 4 letter, that the true reason Plaintiff was terminated was her participation in the Swainson litigation and the ensuing investigation. As a result, there exists a genuine issue of material fact as to whether the remaining Defendants terminated Plaintiff in retaliation for statutorily protected activity.

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's Title VII retaliation claim be **DENIED** (except as to Defendants Renford, Brown, Sloan and Coleman in their individual capacities).

## V. Plaintiff's due process claim

■ Count Four of Plaintiff's complaint is labeled "Denial of Due Process."

The nature of Plaintiff's claim here is again not entirely clear. Despite asserting a claim of "denial of due process," Plaintiff makes no mention in her complaint of a statutory basis for this claim, such as 42 U.S.C. § 1983, nor does she point to the specific procedures or due process guarantees she feels were violated. She also does not even allege that Defendants are state actors capable of violating constitutional due process rights.[7] It is, therefore, questionable whether Plaintiff has even alleged a claim upon which relief could be granted. Nevertheless, even if it is assumed *arguendo* that Plaintiff has properly alleged a cause of action under Section 1983 for deprivation of her procedural due process rights and that Defendants are proper defendants thereto, Defendants are still entitled to summary judgment on that claim.

It is undisputed that, for most of the time she was employed at Grady, Plaintiff was an at-will employee who was not entitled to due process prior to being terminated. She seems to contend, however, that Defendant Renford's November 4, 1998, letter formed an implied contract defining the terms and conditions of her employment thereafter. She then apparently asserts that she followed all of these conditions but was terminated in breach of the terms of the letter.

■ "[A]s a matter of federal law a property interest is created whenever a public employee can only be fired 'for cause.' State law determines whether a particular employee is terminable at will or

---

**7.** For instance, it is not necessarily clear that Defendant Fulton–DeKalb Hospital Authority is a state actor for such purposes. Procedural due process rights are grounded in state law, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and the Georgia appellate courts have held that local hospital authorities are not necessarily a part of the

state or county governments for all purposes. *See, e.g., Thomas v. Hospital Auth. of Clarke County,* 264 Ga. 40, 42, 440 S.E.2d 195, 196 (1994) (holding that a hospital authority is not a part of the state or the county but is a distinct corporate entity and is therefore not entitled to sovereign immunity to tort claims).

only for cause. An explicit contractual provision or rules or common understanding may determine that issue." *Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018,-1025 (11th Cir.1989) (citing *Perry v. Sindermann*, 408 U.S. 593, 602 n. 7, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). "[T]he case law explains that the appropriate inquiry into whether a property interest exists is determined by considering whether under state law, the employee could be fired only for cause." *Id.* at 1026.

The only law, contractual provision, rule or common understanding Plaintiff offers in support of her theory that she was entitled to due process rights is the November 4 letter from Defendant Renford. Nothing in that letter indicates that thereafter Plaintiff could only be fired for cause. Defendant Renford instructed her that she would be terminated if she continued to refuse to answer Defendants' attorneys' questions about the Swainson litigation, but he did not in any way limit the circumstances under which Plaintiff could be terminated otherwise. As a matter of law, this document did not vest Plaintiff with any new property rights in her employment. She therefore continued to be an at-will employee.

Consequently, the undersigned Magistrate Judge finds that Plaintiff had no right to due process before being terminated from her job and, therefore, **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's purported due process claim be **GRANTED**.

## VI. Plaintiff's state law tort claims

In addition to her federal claims, Plaintiff also asserts in her complaint state law claims for negligent retention, breach of

fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress and invasion of privacy. Each of these claims will also be addressed in turn.

### A. Negligent retention

Plaintiff alleges that the other Defendants negligently retained Defendant Renford as they already knew or should have known that he had previously engaged in "sexual harassment and/or discrimination." Defendant correctly argues, however, that this claim is barred by the applicable statute of limitations.

Georgia law provides that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues...." O.C.G.A. § 9–3–33. This two-year limitations period applies to claims of negligent retention. *Alpharetta First United Methodist Church v. Stewart*, 221 Ga.App. 748, 472 S.E.2d 532 (1996). Plaintiff's claim is based on the hospital's alleged negligence in retaining Defendant Renford during the time that she was employed, when he allegedly harassed her and discriminated against her. Because it is undisputed that her employment ended on December 9, 1998, that is the latest date that her cause of action could have accrued.[8] It also cannot be disputed that she filed this lawsuit on December 14, 2000, more than two years later. As a matter of law, Plaintiff's claim is time-barred. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Defendant's motion for summary judgment as to Plaintiff's negligent retention claim be **GRANTED**.

### B. Breach of fiduciary duty

Plaintiff's next claim is similar to her negligent retention claim in that she

---

**8.** Plaintiff has made no argument that the limitations period was tolled for any reason.

alleges that Defendants breached a fiduciary duty owed to her when they were "placed on notice of Defendants' harassment and discriminatory conduct [and] arbitrarily and unreasonably failed to act." Like her negligent retention claim, it appears that this allegation is also barred by the two-year personal injury statute of limitations found in O.C.G.A. § 9–3–33. *See Reaugh v. Inner Harbour Hosp., Ltd.,* 214 Ga.App. 259, 447 S.E.2d 617 (1994) (holding that § 9–3–33 two-year limitation applies to breach-of-fiduciary-duty claims where alleged injury is in the nature of an injury to the person). Because Defendants have not raised this issue in their summary judgment brief, however, the undersigned will address the merits of Plaintiff's claim. *See Focus Healthcare Med. Ctr. v. O'Neal,* 253 Ga.App. 298, 558 S.E.2d 818 (2002) (holding that affirmative defense of statute of limitations can be waived and that trial court does not have authority to raise it *sua sponte* ).

Plaintiff asserts that she had a fiduciary relationship with Defendants because she "was entrusted with personnel files and sensitive matters concerning all employees" and the "information [she] was privy to required trust, confidence and the utmost loyalty and good faith sufficient to establish a fiduciary relationship." (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 18). She claims that Defendants violated this relationship when they "arbitrarily and unreasonably failed to act" after being "placed on notice of Defendants' harassment and discriminatory conduct." (*Id.* at p. 19). In her brief, she does not cite to any evidence in the record to support these assertions.

Defendants first argue that, as an at-will employee, Plaintiff did not have a sufficiently confidential relationship with them to establish a fiduciary duty on the part of Defendants. They also argue that, even assuming *arguendo* that Defendants had such a duty, they did not breach it as she cannot show that Defendants acted in bad faith towards her.

Under Georgia tort law, a fiduciary duty is established where the parties enjoy a confidential relationship.[9] A relationship is "deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23–2–58. However, "[t]he mere fact that one reposes trust and confidence in another does not create a confidential relationship." *Lewis v. Alderman,* 117 Ga.App. 855, 855, 162 S.E.2d 440, 441 (1968). The employer-employee relationship does not generally give rise to a "confidential relationship" but it may under certain circumstances. *Cochran v. Murrah,* 235 Ga. 304, 307, 219 S.E.2d 421, 424 (1975); *Atlanta Market Ctr. Mgmt. Co. v. McLane,* 269 Ga. 604, 607, 503 S.E.2d 278, 281–82 (1998); *Irons v. CSX Transp. Inc.,* 224 Ga.App. 586, 481 S.E.2d 575 (1997).

The mere fact that "Plaintiff was entrusted with personnel files and sensitive matters concerning all employees" does not show the existence of a confidential relationship under Georgia law, and Plain-

---

**9.** In fact, tort claims for breach of fiduciary duty or confidential relationship are essentially the same cause of action. *See* ADAMS & ADAMS, GEORGIA LAW OF TORTS § 33–8 (1999 ed.).

tiff has not pointed to any other specific facts that would elevate her at-will employment status to the level of a fiduciary or confidential relationship. In the cases where the Georgia appellate courts have found that an employer violated a fiduciary duty to an at-will employee, it has generally been shown that the employee trusted and relied upon the employer to his detriment whereas Plaintiff's position shows that, if anything, it was Defendants who put great trust in her rather than the other way around.

The classic example of this is the Georgia Supreme Court's decision in *Cochran*, 235 Ga. at 304, 219 S.E.2d at 421. There, the plaintiff was a farm laborer who had worked for his employer for eight years, lived rent free in a house provided by the employer on the employer's property, and relied upon the employer to give him whatever wages the employer found to be appropriate. When the employee eventually became ill and bed-ridden and was taking pain medication, he relied on his employer's misrepresentation and signed, without reading, a release that limited his ability to recover damages. The *Cochran* Court affirmed the denial of the employer's summary judgment motion, finding that these circumstances of dependence could justify an exception to the general rule that an employment relationship is not a confidential one. *Id.See also Capriulo v. Bankers Life Co.*, 178 Ga.App. 635, 344 S.E.2d 430 (1986) (affirming denial of employer's summary judgment motion and finding possibility of confidential relationship where the defendant-employer, knowing that the plaintiff suffered from a chronic disease, induced him to work for the employer by telling him his illness would be covered by its insurance and then failed to cover his medical claims).

Other than her assertion that she was responsible for handling personnel files,

Plaintiff has not pointed to any evidence that shows that she and Defendants engaged in a confidential relationship beyond that commonly found between employer and employee. Accordingly, the undersigned Magistrate Judge finds that there is no evidence on which a reasonable jury could base a finding that Defendants owed a fiduciary duty to Plaintiff and, therefore, **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's breach of fiduciary duty claim be **GRANTED**.

### C. Intentional infliction of emotional distress

Plaintiff's claim for intentional infliction of emotional distress is another that would seem to be barred by the two-year statute of limitations found in O.C.G.A. § 9–3–33. *See Risner v. R.L. Daniell & Assocs., P.C.*, 231 Ga.App. 750, 500 S.E.2d 634 (1998) (holding that intentional-infliction-of-emotional-distress claim based on alleged workplace harassment was barred by two-year statute of limitations). Again, however, Defendants have not raised this issue, so the undersigned will not address it. *See Focus Healthcare Med. Ctr., supra.*

It appears to be Plaintiff's current contention that Defendant Renford intentionally inflicted emotional distress upon her by retaliating against her for her testimony in the Swainson litigation and her refusal to cooperate in the subsequent investigation. A plaintiff alleging intentional infliction in Georgia must show that the conduct was intentional or reckless; that the conduct was extreme and outrageous; that there was a causal connection between the wrongful conduct and the emotional distress; and the emotional distress was severe. *Jarrard v. United Parcel Service, Inc.*, 242 Ga.App. 58, 59, 529 S.E.2d 144,

146 (2000). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Yarbray v. Southern Bell Telephone & Telegraph Co.*, 409 S.E.2d 835, 838, 261 Ga. 703, 706 (1991). "If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly [sic] severe emotional distress, the jury then must find the facts and make its own determination." *Id.*

The facts of the instant case are quite similar to those in *Yarbray.* There, the Georgia Supreme Court reversed the grant of summary judgment to the defendant-employer where the plaintiff-employee had testified in an employment discrimination lawsuit on behalf of a co-worker and had filed a claim of her own and the defendant had allegedly "deliberately set out to retaliate against her, and to punish her for ignoring its lawyer's admonitions and testifying against the employer, which retaliation included subjecting her to abuse by her supervisor and causing her severe emotional pain...." *Id.* The Court concluded that this conduct "if proved, would meet the threshold which reasonable persons would consider outrageous and extreme conduct and would be sufficient to subject the company to damages." *Id.*

The undersigned Magistrate Judge has already concluded, in regard to Plaintiff's Title VII retaliation claim, that a genuine issue of material fact to be tried by a jury exists as to whether Defendants retaliated against Plaintiff for her testimony

in a Title VII deposition and her failure to cooperate in a subsequent investigation. From that conclusion and the Georgia Supreme Court's holding in *Yarbray,* it follows that a genuine issue of material fact to be tried by a jury exists as to whether Defendants intentionally inflicted emotional distress upon Plaintiff by allegedly doing the same.[10] Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claim be **DENIED.**

### D. Negligent infliction of emotional distress

Plaintiff alleged in her complaint that Defendants negligently inflicted emotional distress upon her. Defendants correctly argue in their brief, however, that no such independent cause of action exists in Georgia. In her response brief, Plaintiff does not address this issue and appears to have abandoned it.

Although it is an often used (and perhaps misused) phrase, Georgia law does not recognize a cause of action for the tort of "negligent infliction of emotional distress." *Ford v. Whipple,* 225 Ga.App. 276, 278, 483 S.E.2d 591, 592 (1997); *S & W Seafoods Co. v. Jacor Broadcasting of Atlanta,* 390 S.E.2d 228, 231, 194 Ga.App. 233, 237 (1989). *See also Lee v. State Farm Mutual Ins. Co.,* 272 Ga. 583, 588, 533 S.E.2d 82, 86 (2000) (declining to "adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of

---

**10.** Defendants also argue that only Defendant Renford could possibly be liable for any alleged torts committed by him as the other Defendants did not ratify his actions. A reasonable jury could certainly find, however, that the other Defendants did ratify the decision of Defendant Renford, the President/CEO, to terminate Plaintiff's employment.

emotional distress"); *E–Z Serve Convenience Stores, Inc. v. Crowell*, 244 Ga.App. 43, 45–46, 535 S.E.2d 16, 19 (2000) (holding that trial court did not improperly allow jury to consider negligent infliction of emotional distress claim because judge rightly charged jury: "There is no recognizable cause of action in this state for negligent infliction of emotional distress"). A plaintiff in Georgia can only be awarded damages for emotional distress where she has proven the defendant liable for otherwise negligent conduct and "there is some impact on the plaintiff, and that impact must be a physical injury." *Ryckeley v. Callaway*, 412 S.E.2d 826, 826, 261 Ga. 828, 828 (1992).

As there is no such cause of action in Georgia and as Plaintiff appears to have abandoned this claim, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's purported negligent infliction of emotional distress claim be **GRANTED**.

### E. Invasion of privacy

 Finally, Plaintiff asserts a claim of invasion of privacy, to which Defendants raise a statute of limitations defense. There is some dispute over which facts Plaintiff relies on for this claim, but all of the potentially relevant facts took place during Plaintiff's employment, which ended on December 9, 1998. As Plaintiff did not file this action until December 14, 2000, more than two years later, and as Plaintiff has not argued that the statute of limitations was tolled in any way, Plaintiff's claim is time-barred. *See Davis v. Emmis Publ'g Corp.*, 244 Ga.App. 795, 536 S.E.2d 809 (2000); *Hudson v. Montcalm Publ'g Corp.*, 190 Ga.App. 629, 379 S.E.2d 572 (1989) (applying two-year per-

sonal injury limitations period to claims for invasion of privacy). Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's invasion of privacy claim be **GRANTED**.

In summary, the undersigned Magistrate Judge hereby **RECOMMENDS** that Defendants' motion for summary judgment be:

+ **GRANTED** as to all of Plaintiff's Title VII claims against Defendants Renford, Brown, Sloan, and Coleman in their individual capacities;

+ **GRANTED** as to Plaintiff's Title VII sexual harassment claim;

+ **GRANTED** as to Plaintiff's Title VII disparate treatment claims;

+ **DENIED** as to Plaintiff's Title VII retaliation claim (except as to Defendants Renford, Brown, Sloan and Coleman in their individual capacities);

+ **GRANTED** as to Plaintiff's due process claim;

+ **GRANTED** as to Plaintiff's negligent retention claim;

+ **GRANTED** as to Plaintiff's breach of fiduciary duty claim;

+ **DENIED** as to Plaintiff's intentional infliction of emotional distress claim;

+ **GRANTED** as to Plaintiff's negligent infliction of emotional distress claim; and

+ **GRANTED** as to Plaintiff's invasion of privacy claim.

February 12, 2002.

### *ORDER FOR SERVICE OF UNITED STATES MAGISTRATE JUDGE'S NON–FINAL REPORT AND RECOMMENDATION AND ORDER*

Attached is the Non–Final Report and Recommendation and Order of the United

States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(a), and this Court's Local Rule 72.1(B). Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Order and Non–Final Report and Recommendation within ten (10) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Order and Non–Final Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the Order and Non–Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.